obviated at a small expense in applying to the court for an order directing the payment to him of the money, instead of to unknown owners.

As the amount is very small, the interests of all parties will be best promoted by leaving him to make that application.

The report is confirmed.

---

## FANSHAWE *a.* LANE.

*Supreme Court, First District, before Hon. Alex. W. Bradford, Referee; October,* 1862.

LIMITED PARTNERSHIP.—DISSOLUTION.—CREDITOR'S BILL.—ASSIGNMENT.—PREFERENCES.—BENEFIT OF ASSIGNOR.

The judgment-creditor of a limited partnership, after the return of execution unsatisfied, is entitled to set aside any void assignment which hinders the enforcement of the judgment and execution against the joint or separate property of any of the members of the limited partnership.

The dissolution of a limited partnership by filing a notice with the county clerk, and by publication for four weeks, under 1 Rev. Stat., 767, § 24, does not become operative until the complete performance of both those acts.*

The prohibition of 1 Rev. Stat., 766, §§ 20, 21,—against any assignment being made by the members of a limited partnership with intent to prefer one creditor over another,—applies merely to preferences by the firm or by any of its partners, both in assignments by the firm of firm property, and in assignments by the members of their individual property, including their interest in the firm effects.

An assignment by a general partnership, in which a member of a limited partnership may be also a member, is not to be treated, in view of these sections, as an assignment by its individual members of their individual property.

Nor can such creditor of the limited partnership avail himself of any matters which render void the assignment of a general partnership, whose members are also members of the limited partnership.

An assignment by a general partnership, preferring a debt due to a firm of which one or more of the assignors are members, is not void as made for the benefit of the assignor, or intended to delay creditors.

Policy of the laws relating to limited partnerships in these respects, in the several States, reviewed.

Trial before Hon. Alex. W. Bradford, referee.

---

* To the same effect, Bulkley *a.* Marks, 15 *Ante*, 454.

This action was brought by George A. Fanshawe, David Milliken, and Wisner H. Townsend, against William G., Edward H., and Jesse C. Lane, Ker Boyce, Joseph W. Parmelee, William F. Boardman, Leroy M. Wiley, and Frederick N. Lawrence, to set aside an assignment made by the firm of "Lanes, Boyce & Co." The facts are sufficiently stated in the opinion.

*Stuart, Whitehead & Stewart,* for the plaintiffs.

*Bowdoin, Larocques & Barlow,* for the defendants.

BRADFORD, Referee.—On the 8th of September, 1860, William G. Lane, Edward H. Lane, Jesse C. Lane, Ker Boyce, William T. Boardman, and Joseph W. Parmelee, were members of a firm transacting business in the city of New York, under the name of "Lanes, Boyce & Co."

On that day, all the partners of said firm, together with James P. Boyce, entered into a limited partnership under the name of "Lanes & Ker Boyce." James P. Boyce was the only special partner, and he contributed to the capital the sum of $125,000.

The new firm continued business until the 4th of March, 1861, when a certificate of the dissolution of that firm was made, and on the 5th of March duly filed. Without such dissolution, this limited partnership would by its terms have continued until June, 1862.

On the 4th of March, 1861, the firm of Lanes, Boyce & Co. made a general assignment, preferring creditors.

On the 13th of June, 1861, the plaintiffs recovered judgment against the limited partnership upon a debt due them by that firm, and issued execution, which was subsequently returned uncollected. They thereupon brought their action to set aside the assignment made by Lanes, Boyce & Co. as void.

I am of opinion that, by the recovery of the judgment, and the issuing and return of the execution uncollected, the plaintiffs were entitled to set aside any assignment which was void, and which hindered the enforcement of the judgment and execution against the joint or separate property of any of the members of the limited partnership.

If the assignment of Lanes, Boyce & Co. was void, the interest of the individual members of that firm in the assets of

the firm was the subject of levy and sale, subject to the payment of the firm debts and the liquidation of its affairs, and the adjustment of the accounts of the respective partners. (*Colyer on Part.*, § 166.)

The only question then in this case is, whether the assignment by Lanes, Boyce & Co. is valid.

This may be considered under two main branches.

I. Was the assignment void because made by the same persons who were members of the limited partnership.

*a.* Was the limited partnership existing, notwithstanding the dissolution executed on the 4th of March, 1861, the same day the assignment was made.

The statute provides that "no dissolution of such partnership, by the act of the parties, shall take place previous to the time specified in the certificate of its formation, or in the certificate of its renewal, until a notice of such dissolution shall have been filed and recorded in the clerk's office in which the original certificate was recorded, and published once in each week for four weeks in a newspaper printed in each of the counties where the partnership may have places of business, and in the State paper." (1 *Rev. Stat.*, 767, § 24.)

Admitting the notice of dissolution to have been fully filed and published, at what time would it become operative and effective? The statute had in view some propriety in requiring notice to parties dealing with the firm, so that they might become apprised of an intended dissolution. The filing and publication are substantial provisions, essential to the full consummation of a dissolution. The language is explicit: "No dissolution shall take place previous to the time," &c., "until" the notice is filed "and published once in each week for four weeks." Very clearly there can be no dissolution until the publication for four weeks is complete, nor until the notice is filed. The notice was not filed till 5th March, 1861, and the publication was not complete until four weeks thereafter.

It follows, that on the 4th of March, 1861, when the assignment was made by the firm of Lanes, Boyce & Co., all its members were partners in the limited partnership of "Lanes & Ker Boyce," which was then existing and undissolved.

*b.* It remains, then, to consider whether there is any prohibi-

tion contained in the statute preventing the partners in a limited partnership from making an assignment, preferring creditors, of their individual or partnership property, having no relation to the assets of the limited partnership, or their individual interest therein.

By the 20th section of the title respecting limited partnerships (1 *Rev. Stat.*, 766) it is provided that " every sale, assignment, or transfer of any of the property or effects of such partnership, made by such partnership, when insolvent or in contemplation of insolvency, or after, or in contemplation of the insolvency of any partner, with the intent of giving a preference to any creditor of such partnership or insolvent partner over other creditors of such partnership, and every judgment confessed, lien created, or security given by such partnership, under the like circumstances, and with the like intent, shall be void as against the creditors of such partnership."

There are two classes of preferences here forbidden—one a preference of the creditors of the firm, the other a preference of the creditors of an insolvent partner. These are the objects of preference forbidden.

The subject of the prohibition is " the property or effects of such partnership," which cannot be so assigned ; and the mode forbidden is, any preference against the creditors of the partnership. The assignments contemplated are such as may be " made by such partnership."

The effect of the section, then, is to proscribe all assignments in contemplation of insolvency, &c., made by the firm, and the subject of which is property or effects of the firm.

The 21st section then proceeds—" Every such sale, assignment, or transfer of any of the property or effects of a general or special partner, made by such general or special partner, when insolvent or in contemplation of insolvency, or after or in contemplation of the insolvency of the partnership, with the intent of giving to any creditor of his own or of the partnership a preference over creditors of the partnership, and every judgment confessed, lien created, or security given, by any such partner, under the like circumstances and with the like intent, shall be void as against the creditors of the partnership."

This section manifestly refers to assignments made by a general or special partner, individually, as distinguished from those

made by the partnership, and provided for in the previous section.

There are two theories for the construction or interpretation of these sections.

1. That it was designed to prohibit all preferences, either by the firm or any of its partners, both in assignments of the firm property, and in assignments of individual property in no way connected with the firm.

2. That it was designed to prohibit any preferences by the firm or any of its partners, in assignments by the firm of firm property, and in assignments by the members of their individual interests in the firm effects.

The latter construction substantially sequesters all the partnership effects, and all the rights of the individual members therein, for the benefit equally of all the creditors.

The former extends the sequestration to the separate property of the partners, and would prevent a partner, general or special, when insolvent, from selling, assigning, or transferring any of his individual property, with the intent of giving to any creditor of his own a preference over creditors of the partnership.

The 22d section of the statute declares that every special partner who shall violate any provision of the two last preceding sections, or who shall concur in, or assent to, any such violation by the partnership, or by any individual partner, shall be liable as a general partner.

In order to judge properly in respect to the application of these provisions, we should have reference to the legislation which introduced this peculiar system of special partnerships into our law. The revisers in their notes say, "The three last sections (20, 21, 22) are intended as a substitute for the 9th section of the original act. The sections as drawn are somewhat complex from the nature of the subject, but it is believed that they express the true intent of the Legislature, and present no difficulties which an attentive perusal will not remove." (3 *Rev. Stat.*, 608.)

On reference to the original act, passed in the year 1822 (*Laws of* 1822, 259), we find that the 9th section provides as follows :

" It shall not be lawful for any such partnership, or any member thereof, in contemplation of bankruptcy or otherwise,

to make any sale, conveyance, gift, transfer, or assignment of
his or their property or effects, or to confess any judgment, or
create any lien whatsoever upon his or their property or effects,
with the intent or for the purpose of paying or securing any
one or more of his or their creditors ; and every such sale, con-
veyance, gift, transfer, or assignment, and every such judgment
or other lien, shall be, and the same is hereby declared, utterly
void, and the partner or partners so confessing or executing the
same, or knowing or consenting thereto, shall be liable as gen-
eral partners."

The legislation on this subject was borrowed from the French
law. (3 *Kent's Com.*, 34 ; Ames *a.* Downing, 1 *Bradf.*, 321.)
The *Société en Commandité* was an institution unknown to the
common law.

By the common law all partners were liable for the obliga-
tions of the firm, on the principle that every person who parti-
cipates in the profits should bear his burden in the losses of the
firm.  By the *Société en Commandité* a special privilege was
secured.  The special partner was liable only for the amount
he invested in the partnership.  This privilege was obtained,
however, only upon compliance with all those provisions of law
which exonerated him from a general liability.

On examination of the Code Civil and the Code of Commerce,
we find that no privilege or priority can be created by the
debtor among his creditors.

The insolvent, from the day of his insolvency, is disseized
from the administration of all his goods.  (*Code de Commerce*,
§ 447.)  Upon insolvency being ascertained, seals are placed
upon all his effects, including those at his private residence.
(§ 452.)  These, however, were provisions of the general law,
and were not specially attached to the limited partnership or to
its members.  Upon the introduction into this country of the
system of limited partnerships, it was natural to bring along
with it, and attach to it, the equality of the rights of creditors
in case of insolvency which existed in France.  We find, ac-
cordingly, that in our original statute of 1822, the prohibition
against preferences of creditors by an insolvent was extended,
not only to an assignment made by the special partnership of
their effects, but also to an assignment by any member of the
firm of his effects preferring his creditors.  With such research

Fanshawe a. Lane.

as I have been able to make, it would appear that wherever, in other States, the special partnership was introduced, and by the general law a right to prefer creditors existed, this right was abrogated, not only in respect to the partnership and its effects, but also in respect to the members and their individual assets.

In Louisiana, assignments preferring creditors are not allowed, and no special provision was necessary. (*Civil Code*, art. 1983, *et seq.*) The same observation may be made in respect to the statutes of Maine. (*Rev. Stat.*, 1857, pp. 274, 275, 437, 438.) In Massachusetts, general assignments by limited partnerships are forbidden, unless they provide for a distribution of the assets among all the creditors, in proportion to the amounts of their respective claims (*Rev. Stat.*, 293, 296, 593, § 89); and when the general partners become insolvent, the same proceedings may be taken in regard to them as in regard to other insolvents, except that the separate estates and separate debts of the special partner shall not be subject to any of the proceedings against such partnership. In Vermont, Rhode Island, Connecticut, Ohio, Michigan, and California, no assignments are allowed unless they provide for an equal distribution among all the creditors of the limited partnership without preference. (*Vermont Comp. Stat.*, 1857, p. 448, § 9; *Conn. Rev. Stat.*, 1854, p. 512; *R. I. Rev. Stat.*, 1857, p. 267, § 10; *Ohio Rev. Stat.*, 597, § 18; 1 *Mich. Rev. Stat.*, 412, § 1284; *Cal. Comp. Laws*, 123, § 9.)

In New Jersey, assignments by the firm, or by a general or special partner, in case of insolvency of the firm or of the partner, preferring any creditor of the firm, or of the partner against the creditors of the firm, are void as against the creditors of the firm. (*Stat. N. J.*, 1847, p. 875, §§ 20, 21.) These provisions are manifestly taken from the laws of New York, and similar enactments have been incorporated in the statutes of Pennsylvania. (*Maryland Code*, 1860, pp. 484, 485, §§ 15, 16; *Stat. Georgia, Cobb's Digest*, 1851, pp. 587, 588, §§ 20, 21; 6 *S. Car. Rev. Stat.*, 1837, p. 580, § 18; *Laws of Miss.*, 925, § 9; *Missouri Rev. Stat.*, 1855, p. 1125; *Indiana Rev. Stat.*, 1843, p. 585, § 9; *Ill. Stat.*, 1858, p. 804; *Wisconsin Rev. Stat.*, 1858, p. 415.)

Upon a careful examination of the laws of the several States, it is obvious that two classes of prohibitions have been consid-

ered, viz., one against an assignment by the firm of the partner-
ship assets; and another against an assignment by the members
of the firm of their individual property.   In some States, as-
signments of the first class alone have been declared invalid;
in others, assignments of both classes.   The form and mode of
legislation in the application of one or both of these rules are so
clear and distinct, that I cannot doubt as to the legislative intent.
Where assignments by the firm of firm property are forbidden,
the provision is susceptible of very simple construction, as will
readily appear from an examination of the statutes of the States
which adopted the rule to that extent only.   Where assign-
ments of both classes are prohibited, the language is largely
varied, so as to bring in the individual partner and his individ-
ual property; and in most cases each class of assignments is
described in a separate section.

Independently, however, of the general legislation of the
States upon this subject, and having reference only to the lan-
guage of our own statute, and its predecessor of the year 1822,
I cannot doubt that full effect must be given to the words,
" every such sale, assignment, or transfer of any of the property
or effects of a general or special partner, when insolvent, &c.,
with the intent of giving to any creditor of his own or of the
partnership a preference over the creditors of the partnership,
&c., &c., shall be void as against the creditors of the partner-
ship."   These words can have no meaning unless they are
applied to individual property.   If applicable only to the inter-
est of the partner in the surplus after payment of the firm debts,
the provision is utterly useless.   If applicable to his interest in
the partnership property before the payment of the firm debts,
it was equally useless, for such a diversion of the property was
already void at common law.   It, therefore, could have no vital
efficacy, unless designed to relate to the individual property of
the members, and by prohibiting an assignment of such prop-
erty, preferring creditors, to give to the creditors of the firm a
larger security than they would possess by the ordinary rules
of law.

But still the question remains open, whether an assignment
by a general partnership of its assets is to be treated in view of
this act as an assignment by its individual members of their
individual property.   The very statute under consideration

distinguishes between assignments made by a partnership of partnership property, and assignments made by a member of his own property. The property of a member is not the property of a firm; and the property of the firm is not the property of its members, except in a modified sense,—that is to say, each member has a title jointly with others which can be reached by creditors; but such title is held in subordination to the rights of his copartners and the creditors of the firm, so that his individual creditors can have an effective remedy only as against the surplus to which he would be entitled after the payment of all the firm debts. This right to this surplus is individual property, and I have no doubt it comes within that class of property which the partner in a limited partnership is prohibited from assigning by way of preference against the creditors of a limited partnership.

I am equally clear that such prohibition does not extend to the effects of a general partnership in which the members of a limited firm may be engaged, and does not prevent such members from uniting with the other members of the general partnership in distributing the assets of such firm among the creditors entitled to them, in such order of preference, by way of assignment, as they may deem best. Such an assignment is a partnership assignment. In making it, the parties are not acting as individuals disposing of their individual property, but as partners disposing in a corporate capacity of their partnership property for partnership purposes. It follows that the assignment of Lanes, Boyce & Co., disposing as it does only of the firm assets in payment of the firm debts, is valid as against the creditors of the limited partnership, notwithstanding it contains preferences.

The original act of 1822 declared all assignments coming within its terms utterly void. The Revised Statutes make the assignment void only as against the creditors of the limited firm, and, of course, limit the invalidity only to the subject-matter unduly assigned. This construction leaves the creditors of the limited firm to pursue all they could have pursued, had no assignment creating preferences been made—viz., the interest of the partners of the general firm in the surplus after all the debts of the general firm are paid. As the assignment, however, does not give any preference in respect to this surplus, there

remains no ground for alleging its invalidity so far as it is affected by the statute relating to limited partnerships.

II. It is urged, also, that the assignment of Lanes, Boyce & Co. is void on the ground that it contains provisions for the benefit of the assignors.   The preferences created by this assignment are among the creditors of the partnership only; the effects are distributed among the parties entitled as creditors of the firm, some being preferred to others.

The assets are marshalled, but no creditor is brought in who at some stage of the marshalling would not have a right to be paid.

All the partners in Lanes, Boyce & Co. were members of the firm of Lanes & Ker Boyce; and one of them, William G. Lane, was a partner in the firm of L. M. Wiley & Co.   The two firms of Lanes & Ker Boyce, and L. M. Wiley & Co., were preferred in the assignment of Lanes, Boyce & Co.

The case then involves this inquiry : whether an assignment by a partnership for the benefit of copartnership creditors is void as containing provisions for the benefit of the assignors, when the debts of the firm to other firms, in which all or some of the partners are interested, are preferred to other debts of the firm.

The objection to the preference in favor of Lanes & Ker Boyce would seem to have no force, so far as the plaintiffs are concerned, for it would bring the amount of the preferred debt into the firm of which they are creditors, and out of whose assets they are entitled to be paid ratably.   So far, however, as the creditors of Lane, Boyce & Co. are interested, both this preference, and that of L. M. Wiley & Co., would properly raise the question.

I am of opinion that no one is interested in this point except the creditors of Lanes, Boyce & Co.   The creditors of Lanes & Ker Boyce have no concern with any disposition of the assets of Lanes, Boyce & Co., except so far as relates to the rights of the partners in the surplus after the payment of all their firm debts.   It is of no consequence to them which of the creditors are paid first, because their interest does not attach until all are paid.   The mode in which the assets are distributed among the creditors entitled, can be questioned only by those creditors; and, as no proof exists impeaching the validity of the debts

directed by the assignment to be paid, and no preference is created in the surplus interest of the partners remaining after the payment of the firm debts, there would appear to be no ground, on the part of the plaintiffs, for assailing the assignment in respect to the mode of marshalling the assets among the creditors of the firm.

As, upon sound, legal, and equitable principles, all the creditors of Lanes, Boyce & Co. are entitled to be paid before the interest of the several partners in the surplus can be reached by other creditors, it would seem to be clear that there is nothing illegal in the mere fact of some of those partnership creditors being preferred to others. So far, then, as the plaintiffs are interested, the preferences contained in the assignment place them in no worse position than if the assignment had provided for an equal distribution of the partnership assets among all the partnership creditors. If there should be a surplus, they will realize as much in one case as in the other.

The only remaining ground, then, upon which the assignment can be assailed by the plaintiffs, must be that it tends to hinder and delay creditors. I am unable to see how this objection applies to an assignment containing preferences, any more than to one not containing preferences. In either case, the assets are placed in the hands of a trustee—in either case, the trustee is bound to proceed with due diligence; and the fact that when he comes to pay, he must pay in a certain order, cannot delay the day of payment, or the conversion of the assets into money for the purpose of payment. If there be any surplus, it may be realized as readily under one kind of assignment as under another.

Indeed, once conceding the right to prefer creditors—which is now well established by repeated decisions—it is manifest that, with a faithful assignee, the exercise of the right of preference creates no greater hindrance to the creditors of the individual partners than when it is not exercised.

But it is urged that the partners of Lanes, Boyce & Co., one and all, are interested in two of the firms which are preferred as partnership creditors. It is not denied that these firms are creditors of Lanes, Boyce & Co., or that they are entitled to payment out of the partnership assets, before the individual creditors of the members composing the firm.

It follows, therefore, that in making the assignment there is no diversion of the partnership assets, but, on the contrary, the partners, in respect to their joint property, apply it to uses to which it should be applied, namely, the payment of their joint creditors. The right of preference is exercised by them in favor of other firms, creditors of the concern, in which said other firms they are interested. Is this preference invalid by reason of the provision of the statute prohibiting assignments " in trust for the use of the persons making the same ?" We have seen that if the assignment were general and equal it would be valid, for the reason that it devoted the assets to the precise objects to which the law would devote them. There is nothing, then, to invalidate this assignment preferring creditors, except the single fact that some of the creditors preferred to others are firms in which the assignors have an interest. There is always some motive for giving preferences, and the fact that there is a motive, therefore, cannot invalidate the preference. If the right to prefer is not used for the purpose of coercing creditors to compound their claims, if all the assets are devoted to the payment of the debts, I cannot perceive why a preference in favor of a firm in which the assignors have some interest should render the assignment void. The assignor has no greater pecuniary interest in the payment of one debt than another.

The fund can only pay a certain amount of debt, and if it all be applied to the payment of one creditor, it leaves the assignor under the same extent of pecuniary obligation as if it had been applied pro rata to the payment of all the creditors.· But again, partnerships are, in a modified sense, corporate bodies, and are not to be confounded with the individuals composing them. They are societies, and their assets are administered as the assets of an association. The assignment under consideration was made by a firm, and it contained preferences in favor of other firms ; the trusts were for the use of such other firms, and not for the use of the assignors individually or collectively as Lanes, Boyce & Co.

It is true, that by reason of the preference, an assignor interested in a firm so preferred may, on the adjustment of its affairs, find his interest in the surplus thereof increased by such preference; but still that interest remains open to the claims of his

creditors, and is in nowise protected or covered by the assignment.

The provision directing the payment of the debt due Lanes & Ker Boyce to James P. Boyce, the partner liquidating the affairs of the latter firm, does not conflict with the statute relating to the assignments. James P. Boyce is in no sense a trustee of property under a general assignment for the payment of creditors. As a member of Lanes & Ker Boyce he is acting in the adjustment of their affairs, and the distribution of their effects equally among all the creditors. The payment to him, therefore, in discharge of the debt of Lanes, Boyce & Co., is very properly directed. The payment would be valid, and discharge the debt, without the provision that the amount should be applied in liquidation. That was the simple duty of James P. Boyce by the terms of the dissolution, and was not made any more his duty by the terms of the assignment. Whatever trust he was charged with arose from the terms of the dissolution and by operation of law, and not from the assignment.

I conclude, therefore, on the whole case, that the plaintiffs have not exhibited any sufficient ground for holding the assignment invalid.

There should be judgment for the defendants.

---

## BARKER *a.* COOK.

*Supreme Court, First District; General Term, May,* 1863.

ORDER OF ARREST.—MODE OF EXECUTION.—IRREGULARITY.—DEFECTIVE COPIES.

The provision of section 184 of the Code, which requires the sheriff to deliver a copy of the order of arrest and affidavit to the defendant, upon arresting him, is directory merely. (Per SUTHERLAND, P. J.)

In cases where the opposite party has an opportunity of inspecting an original affidavit, and it is properly signed, it is not necessary that the copy served should contain the signatures of the affiant and the officer, nor that the copy should purport that the original was so signed. (Per MULLEN, J.)

The fact that the copy of the affidavit served with an order of arrest does not purport to have been duly signed or verified, affords no ground for vacating the order, or discharging the defendant from custody.