## HENRY WELSH v. J. H. BRITTON.

(Case No. 4277.)

1. FRAUDULENT ASSIGNMENT.—An assignment which reserves an indi-
vidual advantage to a member of the mercantile firm making the
assignment is invalid as to creditors; but an assignment which
makes preferred creditors of a firm, one of whose members is also
a member of the failing firm, is not rendered invalid for that cause.

APPEAL from Grayson. Tried below before the Hon.
Joseph Bledsoe.

Keep & Yates, a wholesale grocery firm, made an as-
signment by deed to J. H. Britton. The deed purported
to convey all the property of Keep & Yates to Britton,
and to provide that Britton should sell the same, collect
the notes and accounts and apply the proceeds to the pay-
ment of the debts in the order and manner specified in
the deed. On the 17th day of January, 1879, Henry
Welsh filed suit against Keep & Yates on a debt which
was due prior to the day on which the assignment was
made, and on the same day caused a writ of garnishment
to be issued and served on Britton. November 24, 1879,
Welsh recovered judgment against Keep & Yates for the
sum of $582.80, with interest and costs. March 14, 1879,
Britton answered as garnishee, denying indebtedness and
possession of property and effects. The answer was con-
troverted by Welsh, and issues made up under the direc-
tion of the court, in which Welsh attacked the assignment
as fraudulent and invalid, and sought to subject the pro-
ceeds of the assigned property to the payment of his
claim. Trial by jury, resulting in a verdict for the garni-
shee, upon which judgment was rendered.

The firm of Bond & Caruthers, composed of Samuel R.
Caruthers and Monroe M. Bond, was named in the deed
of assignment as a preferred creditor. Plaintiff claimed
that Monroe M. Bond was also a member of the firm of
Keep & Yates, and that Bond & Caruthers were made

preferred creditors in the assignment for the purpose of fraudulently reserving an interest and benefit to Bond. The testimony of Britton objected to by plaintiff was as follows: "The property of Bond & Caruthers was turned turned over to me as receiver by M. M. Bond and Mrs. Caruthers, the executrix of Caruthers, by a mutual written agreement. It was placed in my hands to wind up the business and pay the debts of the firm."

*Finley & Pasco*, for appellant. . . . If, as in this case, an insolvent firm makes an assignment for creditors, and prefers a debt of another firm, one member of which is also a member of the assigning firm, it is such a reservation to one of the assignors as will avoid the assignment. Kayser *v.* Heavenrick, 5 Kas., 224; Burrill on Assignments, 3d ed., secs. 198–200.

*Hare & Head*, for appellee.

GOULD, ASSOCIATE JUSTICE.— It is not proposed to pass separately on each of appellant's numerous propositions and assignments of error. We think the principal questions arise out of the claim that Bond was a member of the firm of Keep & Yates, and that the assignment made by that firm was invalidated because of a preference given to a debt due Bond & Caruthers, of which latter firm Bond had been a member.

The evidence shows that the firm of Keep & Yates, wholesale grocers in Sherman, then composed of C. B. Keep and Thomas Yates, employed M. M. Bond as salesman, his compensation to be a percentage of the net profits, or, as one witness testifies, at his option, a salary of $125 per month. The evidence shows, we think, that the only interest in the firm that Bond had was under this agreement, and that, at the time of the assignment, there was nothing due him, or coming to him, as his interest in the profits. The evidence shows that the parties,

at and after the making of this agreement, did not treat
it as one of partnership, but that Bond was treated as
an employee.    There is, however, evidence to the effect
that in February, 1878, a writ of garnishment from a
justice's court was issued against C. B. Keep, Tom Yates
and M. M. Bond, alleged to compose the firm of Keep &
Yates; that judgment was rendered on said writ against
the garnishees; that a writ of *certiorari* was sued out
in the name of the same parties, described as "doing busi-
ness under the firm name and style of Keep & Yates,"
removing said cause to the county court; the affidavit to
the petition being made by M. M. Bond, and bond for
*certiorari* was given, purporting to be signed by each of
the parties.    The petition for *certiorari* did not seek relief
on the ground that the firm was not composed of the
three, Keep, Yates and Bond, nor deny the existence of
that firm.    That case resulted in the county court in
judgment for petitioners.    Yates testifies denying any
knowledge that Bond was named as a partner in these
proceedings,— says Bond was not a partner but was a
salesman, who was to receive twenty per cent. of net
profits, being guaranteed $125 per month.

The charge of the court bearing on the question of the
existence of the partnership was:

"If Bond was liable for the losses and debts, and was
also interested in the profits of the firm of Keep & Yates,
he would be a partner; but if he was only to receive a
part of the net profits as wages, he would not be; and
Bond could not be a partner unless the parties intended
and agreed among themselves that he should be."

The following charge asked by appellant was refused:

"If Bond was simply to receive a sum equal to a cer-
tain portion of the profits of the business as compensation
for his services, that alone would not make him a partner.
But if, under the contract between him and Keep &
Yates, he was to have an interest in the profits as profits,

that is, an interest in that undivided portion of the effects of the firm which might remain after deducting from the entire effects the capital invested together with the expenses of the business, whether such remaining portion be money or other property, he would be a partner."

It must be remembered that the question of partnership *vel non* was only material in so far as it affected the validity of the assignment. If, by reason of the terms of the agreement, or by reason of his holding himself out as a partner, Bond had become liable as a partner for the debts of the firm, it might still be that, as between him and Keep & Yates, he had acquired no actual interest or ownership as partner in the firm property. The effect of the agreement in making Bond liable to third persons as a partner was one thing, and its effect in making him actually a partner in the firm property was a very different question, dependent on the intention of the parties as gathered from the agreement and the surrounding circumstances. Collyer on Partnership, secs. 39–44.

If Keep & Yates, as between them and Bond, remained sole owners of the firm property, the assignment of that property was their act alone, and its validity would not be affected by a preference to Bond. There is no "stubborn rule of law" controlling the question of their partnership *inter sese*, regardless of the intention of the parties; but on the contrary, the first object in determining that question is to ascertain that intention. In the light of these principles, we are not inclined to think that the court erred in refusing a charge which left out of view the intention of the parties, nor that it committed any material error in the charge as given. But even if the charge went too far in giving too great prominence to intention, we are of opinion that the preference to Bond & Caruthers was not such as would have supported a verdict setting aside the assignment on that ground, and

that therefore the error in the charge should not lead to a reversal.

Appellant asserts that: "If an insolvent person makes an assignment for creditors, and prefers a debt due another firm, one member of which is also a member of the assigning firm, it is such a reservation to one of the assignors as will avoid the assignment." The case of Kayser *v.* Heavenrick, 5 Kas., 524, cannot be said to establish so broad a principle. There a preference was given to one Lowentholl, and one of the assigning firm was an equal partner with Lowentholl in the preferred claim — that fact not being known to the assignee or the creditors. This was held to be a secret trust for the benefit of that member of the firm and to invalidate the assignment. The fact of secrecy was given prominence. On the other hand, the case of Fanshawe *v.* Lane, 1 Abbott's Pr. 82, asserts the absolute right of an assigning firm to prefer such debts. The court below we think gave the law of the case in its charge as follows:

"If you believe from the evidence that M. M. Bond was a partner of Keep & Yates, and any advantage was reserved to him individually in said assignment, you will find for the plaintiff; but if Bond was a member of said firm, and was also a member of or had been a member of the firm of Bond & Caruthers, then the fact that said Bond & Caruthers were among the preferred creditors would not vitiate the assignment nor entitle the plaintiff to recover simply on the ground that Bond & Caruthers were so preferred."

The evidence shows that Bond, of the preferred firm of Bond & Caruthers, was insolvent, and was largely indebted to the estate of his deceased partner. The preferred claim of $250 went into the hands of a receiver entrusted with the settlement of the business of Bond & Caruthers, and was applied to the debts of that firm. Even had it not been so applied, it would have been used

in settling Bond's indebtedness to the estate of his deceased partner. In no event could Bond receive any part of the proceeds of this preferred claim. Nor, so far as it appears, was he benefited by receiving any credit by reason of the preference. The claims of the creditors of Keep & Yates were not released. It is not perceived how, if Bond was a member of both firms, he was benefited by being credited on the indebtedness of Bond & Caruthers, rather than on the indebtedness of Keep & Yates; nor how, under the facts of the case, this preference could have operated a fraud on the creditors of Keep & Yates, even if Bond were a member of the firm. Under the evidence and the law we think that a different verdict would have been erroneous.

Looking at the entire charge in the light of the evidence and the issues joined, the law of the case appears to have been fairly stated to the jury; nor, in view of the evidence and issues, do we see any error in the refusal of instructions asked. The propositions, presented under the assignment of error that the court erred in overruling the motion for new trial, need not be considered, that assignment being too general.

Nor is it deemed material to notice the assignments of error objecting to the admission or exclusion of evidence, further than to say that in each case we are of opinion that the court ruled correctly.

Looking at the entire case our conclusion is that the judgment be affirmed.

AFFIRMED.

[Opinion delivered April 26, 1881.]