CAMPBELL. V. THE COLORADO COAL AND IRON CO.

1. When the same persons carry on the same business as partners in two different places, and under different firm names, there is in law but a single partnership, and the assets of both nominal firms are equally applicable to the payment of all the creditors.

2. It may be considered a settled doctrine that voluntary assignments for the benefit of creditors, which are valid in the state where the owners reside, will be held to pass personal property included, the *situs* of which is in other states.

3. Section 68 of the General Statutes relates to general assignments for the benefit of creditors, and does not prevent the making of partial assignments by insolvent debtors.

4. So long as the debtor retains dominion over his property, in the absence of statute and of fraud, he may transfer, incumber or dispose of it as he pleases.

5. Under the statute, section 68, where a debtor makes an assignment of part of his property for the benefit of creditors generally, and at or about the same time conveys, by separate instruments, the balance thereof, either as payment or security, to particular creditors, and the circumstances are such as to indicate that he may thereby have attempted an evasion of the statute above mentioned in so far as it relates to preferences, yet that portion of the transaction represented by the assignment, if in and of itself not tainted with fraud, may stand. The statute, in such case, could operate only to invalidate the preferences given, in an action brought by and against the proper parties.

6. The principle that a deed which is partly void, as against the provisions of a statute, or as against the common law, is void altogether, has no application to a case like the one at bar.

7. Section 1520 of the General Statutes, relating to the conveyance of chattels for the grantor's benefit, refers to cases where the use or trust for the grantor is the principal purpose accomplished by the conveyance, and not merely an incident thereto.

*Error to Superior Court of the City of Denver.*

PETITION for rehearing.

The cause was tried upon an agreed statement of facts. This statement is, in brief, as follows:

Ferdinand Jensen and William M. Bliss were engaged as partners in mercantile business at Denver, Colorado, and Deadwood, Dakota. The firm name, at the former

place, was Jensen, Bliss & Co.; at the latter, it was Jensen & Bliss. At the hour of 7 o'clock P. M., October 1, 1884, Jensen, Bliss & Co. made an assignment of certain claims, demands, notes and accounts, aggregating in value about $13,500, to one Metcalf, for the purpose of paying or securing a *bona fide* firm indebtedness of $20,000. At the same time, and for a like purpose, Bliss also executed to Metcalf a trust deed upon certain realty, the title of which was in the former's name alone. At the hour of 9 P. M. of the said October 1st the firm executed and delivered to R. A. Campbell, as assignee, an assignment of all the partnership property, "of every name and nature within the state of Colorado," for the equal benefit "of each and every of our creditors in both branches of our said business and everywhere." Prior to this, and about September 20, 1884, the attorney of the firm was directed to draw both of said assignments. The one to Metcalf was prepared by said attorney on said September 20th, and other four days later, to wit, September 24th. On the 29th day of September, without the knowledge of Metcalf, an entry was made upon the books of the firm of the transfer to him of the choses in action mentioned in the written assignment made for his benefit. At the time of the assignment to him, Metcalf knew that the assignment to Campbell was about to be made; but the assignee, Campbell, was ignorant, when he accepted the trust, of the Metcalf transaction. On the 2d and 4th days of October, 1884, the firm of Jensen & Bliss executed and delivered mortgages to certain of their Deadwood creditors upon their Deadwood property. Though the nature of this property is not specifically stated in the record, yet we are sufficiently advised to say that a large part of it was personalty. During all of the preceding transactions, both nominal firms were insolvent. November 8th following, plaintiff, the Colorado Coal & Iron Company, being a *bona fide* creditor of Jensen, Bliss & Co., brought an action against the firm for the amount

of its claim, and caused a writ of attachment to be levied upon the property in the hands of Campbell as assignee. The latter intervened in this attachment proceeding, claiming the property by virtue of the assignment aforesaid.

Judgment was rendered against the intervenor, and in favor of plaintiff, whereupon the former sued out this writ of error. The principal question presented for determination related to the validity, under all the foregoing circumstances, of the assignment to Campbell.

Messrs. E. O. WOLCOTT, A. E. PATTISON and J. F. VAILE, for plaintiffs in error.

Messrs. R. D. THOMPSON and J. M. WALDRON, for defendant in error.

HELM, J. We are now satisfied that upon one of the material questions considered in the opinion of the court, written by myself, and filed in this cause, an erroneous conclusion was reached. That opinion is accordingly withdrawn. The views therein expressed which are still adhered to, as well as those resulting from our further investigation upon this rehearing, are embodied in the following opinion, which will be substituted therefor.

1. Since the persons constituting both the firms mentioned in the agreed statement were the same, and they were engaged in carrying on the same business in both places, there was in law but a single partnership. The fact that there were two partnership names is of no importance, and "the assets of both nominal firms were equally applicable to the payment of all the creditors." *In re Williams & Co.* 3 Woods, C. C. R. 493, and authorities there cited. We shall, therefore, in the discussion of this case, adopt the theory that there was but a single partnership, which was engaged in business at the two places mentioned; and that the Colorado creditors and

the Dakota creditors were equally interested in the partnership assets, whether at Denver or Deadwood.

2. It may be considered a settled doctrine that voluntary assignments for the benefit of creditors which are valid in the state where the owners reside will be held to pass personal property included, the *situs* of which is in other states. The assignees take title thereto unembarrassed by the claims of creditors, residing where the property is situate, who have not obtained a prior lien by levy of attachment or other process. We are not here concerned with the qualification of this doctrine recognized by some of the decisions, where the "foreign assignment is repugnant to the policy or laws of the state in which domestic creditors have attached property located therein." It follows from the foregoing propositions of law that Jensen, Bliss & Co. might have included in the assignment to Campbell their Dakota personal property also. In view of this fact, and of the matters set forth in the agreed statement, we proceed to briefly examine the law governing assignments for the benefit of creditors in Colorado.

3. Section 68, General Statutes, reads as follows:

"Whenever any person or corporation shall hereafter make an assignment of his or its estate for the benefit of creditors, the assignee named in the deed of assignment, appointed or selected, shall be required to pay in full, from the proceeds of the estate, all moneys *bona fide* due to the servants, laborers and employees of such assignors for their wages accruing during the six months next preceding the date of such assignment, but to exceed, in no event, the sum of $50 to any one person then remaining unpaid. All the residue of the proceeds of such estate shall be distributed ratably among all other creditors, and any preference of one creditor over another, except as above allowed, shall be entirely null and void, anything in the deed of assignment to the contrary notwithstanding."

We think that the word "estate," used in this statute, means all of the debtor's property, both real and personal, not exempt from execution, and hence that the statute was designed by the legislature to cover general assignments. We are satisfied that, in this respect, no distinction can fairly be drawn between section 68 and the statutes of other states on the subject wherein the expression "general assignment" occurs. Therefore, in our judgment, an important question presented · is, are partial assignments prohibited or interfered with by this provision? To satisfactorily answer the foregoing question, it is necessary for us to look beyond the statute, and consider the common law. We use the term "common law" in its broader sense, as including those doctrines of equity jurisprudence which have not been expressed in legislative enactments.

4. A fundamental principle underlying this subject is that, so long as the debtor retains dominion over his property, in the absence of statute and of fraud, he may do with it as he pleases. He may transfer the whole of his estate in payment or in security of a single *bona fide* debt. He may assign, mortgage or otherwise incumber his estate, or a part thereof, in favor of some of his creditors, excluding the rest; or he may make an assignment for the benefit of all his creditors, and therein give preferences to a selected few. It is only when, either by a general assignment or otherwise, the debtor has parted with the dominion over his property, that, in the absence of statute or fraud, the foregoing privilege is forfeited. Bur. Assign. (3d ed.) §§ 160, 161, and cases cited; *Lampson et al. v. Arnold*, 19 Iowa, 479, and cases cited; *Worman v. Wolfersberger's Ex'rs*, 19 Pa. St. 59; 2 Kent, Comm. (12th ed.) 532, and cases cited, as to assignments. While, at first, this common law doctrine may seem somewhat inequitable, yet, upon reflection, it clearly appears to be supported by at least one consideration of the most weighty import. To hold that debtors may not

give preferences among their *bona fide* creditors, so long as they control their property, would greatly embarrass the transaction of nearly all kinds of business. Some of the authorities go so far as to say that such a rule would prevent the carrying on of business altogether. "Whilst a man retains dominion of his property, he may incumber and convey it as he pleases, if not directly forbidden by law, and prefer such creditors, by payment or transfer, as he chooses; *and if it were not so, an individual could not get along in his business.*" *Blakey's Appeal,* 7 Barr, 449. "If, while a man retains his property in his own hands, the right of giving preferences should be denied, he would so far lose the dominion over his own that he could not pay *anybody*, because whoever he paid would receive a preference." *Tillou v. Britton,* 9 N. J. Law, 120. "Any enactment which takes away the right of a debtor to prefer them [creditors] would produce a sudden change, so extensive in all business transactions that its policy is somewhat questionable." *Worman v. Wolfersberger's Ex'rs, supra.*

Recurring to the question already propounded: Does the statute under consideration so far change the foregoing common law principle as to prohibit preferences in favor of chosen creditors by means of *partial* assignments? If the expression "his or its estate," therein contained, means, as we have concluded it does, all of the debtor's property not exempt from execution, then the statute may read: "Whenever any person or corporation shall hereafter make a general assignment of his or its estate for the benefit of creditors," etc. The general rule is that statutes in derogation of the common law are to be strictly construed. Certainly a proper regard for this rule forbids the enlargement of a statute by construction, so as to include common law principles not clearly within its language or spirit. In so far as the section before us prohibits preferences in general assignments, it unquestionably modifies and restricts the com-

mon law; but if the legislature had intended to further change the common law, and deny preferences through *partial* assignments, it should have said so, as like bodies elsewhere have done, in unequivocal language. The courts should not have been left to infer this meaning from the expression used.

In Iowa a statute reading as follows, "No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors of the assignor shall be valid unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims," was held not to inhibit the making of partial assignments. The court say: "Nor does the statute prohibit or interfere with the right of any debtor as it existed prior to the statute to make a partial assignment." *Lampson et al. v. Arnold, supra; Davis & Co. v. Gibbon,* 24 Iowa, 257.

A similar construction was placed upon the following Alabama provision: "Every general assignment made by a debtor, by which a preference or priority of payment is given to one or more creditors over all remaining creditors of the grantor, shall be and inure to the use and benefit of all the creditors of the grantor equally." *Stetson & Co. v. Miller,* 36 Ala. 642.

An act of congress provided, in effect, that when "a debtor, not having sufficient property to pay all his debts, shall have made a voluntary assignment thereof, for the benefit of his or her creditors," claims of the United States should be preferred. The supreme court denied the preference where a partial assignment only was made. That court, speaking through Chief Justice Marshall, says: "Had the legislature contemplated a partial assignment, the words 'or part thereof,' or others of similar import, would have been added." *U. S. v. Hooe,* 3 Cranch, 73; *Conard v. Atlantic Ins. Co.* 1 Pet. 386; *U. S. v. Howland et al.* 4 Wheat. 108.

The legislature of New Hampshire adopted a statute

providing, in substance, "that no assignment made for the benefit of creditors of any debtor so assigning his property shall be valid in law except the same shall provide for an equal distribution of all the debtor's property among his creditors, in proportion to their respective claims." The court say with reference thereto:

"It never could have been the intention to prohibit a debtor from assigning any particular property he might possess for the purpose of paying any particular debt or debts that he might owe. Such a prohibition would be absurd, so long as any creditor or creditors are permitted, as they are by our laws, to attach any property of the debtor and thus apply it to the payment of their debts, without the consent of the debtor." *Meredith Manuf'g Co. v. Smith*, 8 N. H. 347.

Again, on the same subject:

"We are of opinion that the assignments intended by the statute are general assignments, purporting to convey all the debtor's property *to trustees for the benefit of all* his creditors," etc. *Low v. Wyman*, 8 N. H. 536.

In Vermont there was enacted a statute providing that all general assignments thereafter made for the benefit of creditors should, as to such creditors, be null and void. With reference to this statute, the following language is used in one of the opinions of the supreme court:

"I take it the statute, at least, prohibits an assignment of all the property of an insolvent debtor to a trustee for the benefit of all his creditors, even though they are to enjoy it *pro rata; while it allows a preference to be given to favorite creditors, to the exclusion of others*, and especially if the insolvent excepts from the assignment a remnant of his property. Thus equality among creditors is discountenanced, in disregard of the long established maxim that equality is equity." *Hall et al. v. Denison*, 17 Vt. 310.

Our conclusion, based, as we think, upon both principle and authority, is that the statute under consideration

should not be construed as prohibiting or interfering with the making of partial assignments; that, so far as the statute is concerned, such assignments are perfectly valid. The repeal of the act in question, and substitution therefor of a more comprehensive law, by the fifth general assembly, being subsequent to the transactions involved, could not in any event affect the decision of this case. Since the deed to Campbell omits all personal property of the firm at Deadwood, it is a partial assignment. It follows from the foregoing conclusion that this assignment was valid at common law, and that the statute then existing had no application thereto. We do not deem the suggestion made in *Van Patten v. Burr*, 52 Iowa, 518, distinguishing between assignments directly to the creditor in *payment*, and assignments in trust for creditors, sufficiently supported by either reason or authority to warrant a modification of the foregoing views.

5. But counsel for defendant in error argue that the deed to Metcalf, the assignment to Campbell, and the Dakota mortgages were all executed in pursuance of a single design on the part of the partnership, and consequently those instruments represent but one transaction; that it was the intention of the partners to make a general assignment, with preferences, but that for the purpose of evading the statute, and securing the preferences which it prohibited, they devised and executed the plan of preferring the favored creditors in separate writings. Upon these grounds counsel base the conclusion that the assignment in question should be held void. It may be impossible, considering the facts before us, and the view that our statute did not prevent partial assignments, to say that a general assignment could not have been here contemplated, or that an evasion of the statute was attempted; but admitting, for the purposes of argument, the correctness of the foregoing premises stated by counsel, we are satisfied that the conclusion they draw therefrom is unsound. There is no language in the statute

which, under any circumstances, invalidates the assign-
ment itself. The preferences only are declared to be void.
In this respect it is unlike corresponding provisions which
now exist or have existed in Massachusetts, Iowa, Ala-
bama and other states. If preferences were given in the
deed of assignment, no one contends that the assignment
itself would thereby fail; but if preferences stated in the
instrument would be harmless, why should the declara-
tion thereof through separate writings render the assign-
ment void?

The fact that an insolvent debtor clearly attempts to
evade the statute by preferring certain creditors in sepa-
rate transfers or instruments conveying portions of his
property at or about the time he makes a general assign-
ment, if such fact can be and is established, may be a
reason for avoiding the preferences so given, in a suit by
or on behalf of injured creditors; but it is not a reason
for declaring the assignment itself invalid. The assign-
ment, this being the only objection thereto, may well be
permitted to stand, and the property included be distrib-
uted ratably by the assignee among the creditors. The
purpose of the statute was not to discourage or restrain
the making of general assignments, but to inhibit par-
tiality therein toward favored creditors. To say that the
assignment itself must fall on account of the attempted
evasion of the provision relating to preferences, is to give
an effect to the law which the legislature did not express,
and which we are satisfied it did not intend. Therefore
it makes no difference, so far as the question here in-
volved is concerned, whether or not the Metcalf assign-
ment and the Dakota mortgages were a part of the same
transaction with the assignment to Campbell. Assuming
that they were, and that all, taken together, constitute
a general assignment wherein the assignors attempted to
evade the statute, still the Campbell branch of the trans-
action, the validity of which is the only question before
us, should be sustained.

6. The much-abused principle that a deed which is partly void as against the provisions of a statute, or as against the common law, is void altogether, has no application to the case at bar. This transaction, if it could be considered a general assignment, would not be in conflict with either the statute or the common law. The statute would simply operate to annul the preferences, allowing the assignment to stand, while the common law would sustain both the preferences and the assignment. On the misapplication and also the true use of the maxim, " void in part, void *in toto*," see *Curtis et al. v. Leavitt*, 15 N. Y. (Ct. Ap.) 123, 124, and cases cited; *Savage v. Burnham*, 17 N. Y. (Ct. Ap.) 576. It must be remembered always that the deed to Campbell, considered by itself, is not challenged on the ground that there was any fraud in fact connected with its execution; moreover, that it is admitted that the assignment to Metcalf paid or secured a *bona fide* indebtedness of the partnership, and that the Deadwood mortgages secured claims existing against the firm, in favor of the creditors named therein.

7. One question yet remains to be considered. The list of creditors mentioned in the schedule filed for record after this suit was brought contains, among other names, that of a firm known as Jensen & Johnson. The Jensen there referred to is admitted to be one of the partners in the partnership making the assignment under consideration. Counsel contend that this fact invalidates the assignment in law, since one of the assignors is a beneficiary, and will receive a small part of the proceeds from the sale of the assigned estate. Their position is, we think, untenable. Section 1520, Gen. Stats., upon which this objection is based, reads as follows:

" All deeds of gift, all conveyances and transfers or assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person

making the same, shall be void as against the creditors existing of such person."

The intent with which the transaction is had governs the application of this provision. Similar statutes have been held to include only those cases where the use or the trust for the benefit of the grantor was the principal purpose accomplished by the conveyance, but where such benefit was merely an incident, the main purpose and effect of the instrument being lawful, the application of the statute, save possibly as to such incidental use or benefit, has been denied.

In *Curtis v. Leavitt, supra*, at pages 122 and 123, it is said:

"All reasoning and all authority, as we have seen, concur in the conclusion that it [the statute of personal uses] has no application to cases of real and actual alienation upon valuable consideration, and for active and real purposes, although incidental benefits are reserved to the grantor. * * * This statute, then, only avoids conveyances, etc., which are *wholly* to the use of the grantor. If we came to a different conclusion, if we held that it applied to transfers made for other objects, but containing a residuary interest or partial use for the debtor, then the question would arise whether the whole is void or only so much of the grant as is not sustained by the valid purpose for which it was made. On this point I should come to the conclusion that the statute does not subvert all instruments in which any inoperative trust is expressed along with others that are good, but leaves those which are good and valid to stand."

And, among the propositions adopted by the court, on page 295 is the following:

"It being the opinion of the court that the statute applies only to conveyances, etc., primarily for the use of the grantor, and not to instruments for other and active purposes where the reservations to the grantor are inci-

dental and partial." See, also, *Morgan v. Bogue*, 7 Neb. 429; *Shoemaker v. Hastings*, 61 How. Pr. 97.

In determining the question before us, the character of the use intended by the deed is likewise an important consideration. It is extremely doubtful if Jensen individually would realize any material benefit by the payment of the claim of Jensen & Johnson; for his interest in the sum thus received would, of course, be liable for the debts of that partnership, while it is not beyond the reach of the creditors of Jensen, Bliss & Co. after they have exhausted the property of the latter firm. See *Fanshawe v. Lane*, 16 Abb. Pr. 71; *Welsh v. Britton*, 55 Tex. 118.

8. Under the foregoing views the operation of the assignment statute considered was confined to a narrow field. As now construed, it permitted the debtor to choose between a general and a partial assignment, and its only effect was to require that if he elected to make the former, and thus deprived his unpreferred creditors of recourse against his property, and divested himself of all control over his entire estate, so that he could not personally superintend the payment of his debts therefrom, such estate should be divided *pro rata* among his creditors. But we are satisfied, not only that this interpretation of the statute is in harmony with the language used, and supported by authority, but also that it may be in accord with the better reason and the sounder policy. Experience demonstrates the extreme danger of interfering by legislation with the debtor's *jus disponendi*, so long as he retains dominion over his property. Even a careful and skilful attempt by statute to fully guard all the equitable rights of creditors might result in untold disaster to the business world. Accordingly legislative bodies, our own included, have exercised extreme caution in dealing with the subject of assignments, and have left untouched many of the principles relating thereto which prevail at common law.

Our assumption, in the opinion filed, that the statute inhibited partial assignments for the benefit of creditors, was broader than its provisions justified, and led to a conclusion which, as already suggested, we now consider erroneous.

The judgment will be reversed and the cause remanded.