Thomson, J.,
delivered the opinion of the court.
On the 19th day of June, 1890, the defendant Edwards, a merchant in Denver, was indebted to the defendant Thropp in the sum of $2,849.13, on account of money which Thropp had from time to time advanced him to assist him in carrying on his business'. On that day Thropp commenced an action against Edwards to recover the indebtedness, and caused a summons to be issued in the cause, which was served upon Edwards on the same day. On the next day Edwards subscribed an answer admitting the indebtedness and consenting to judgment against him for the amount, which was then ac *471 cordingly entered. On the following day the plaintiff, Kellogg, recovered a judgment against Edwards for $780. On June 20th, the day of the rendition of Thropp’s judgment, he sued out an execution upon it, directed to the defendant Barton, the sheriff of Arapahoe county, who levied it upon a stock of goods of Edwards, which were afterwards sold by the sheriff under the execution., and were bid in by Tliropp for a sum considerably less than his judgment. Edwards had also transferred some of his outstanding accounts to Thropp, amounting to about $60.00, retaining the others, upon which he afterwards collected about $300. With the exception of these accounts retained by him, and some household goods not subject to execution, all the property of Edwards was taken and sold under Thropp’s execution. Thropp was a nonresident of the state, and the defendant, Carpenter, represented him in the procurement of his judgment, and the seizure and sale of the property.
The complaint charges that at the time of the transaction with Thropp, Edwards was hopelessly insolvent; had determined that he was unable to continue longer in business ; and consented to the judgment in favor of Thropp, and the issue and levy of the execution in order to give a preference to Thropp, and with the intent to hinder, delay and defraud his creditors, and prevent the collection of their just debts. The prayer is that the transaction, by means of which the property of Edwards was sold and transferred to Thropp, be decreed to be a general assignment for the benefit of all the creditors of Edwards ; that the defendants, Thr.opp, Carpenter and Barton, be adjudged trustees for the creditors, and that a receiver be appointed to take the property, convert it into money and distribute it among them. The cause was tried and judgment given for the defendant.
The charges of fraud are not sustained by the evidence. It seems clear that the purpose of Edwards, in allowing judgment to go against him in favor of Thropp, was to enable Thropp to collect a debt due him from Edwards, and which the latter was without money to pay. The legal effect of the *472 transaction is therefore the only question for consideration. It is ably and elaborately argued that Edwards being insolvent, and the transaction operating as a transfer of substantially all his property for the benefit of one creditor to the exclusion of the others, it was in violation of the statute concerning assignments for the benefit of creditors, and should therefore at the election of the excluded creditors be •converted into a general assignment, in the benefits of which all creditors will be allowed to participate. Can this contention be sustained ?
The following are the portions of the statute affecting the question in controversy:
“Section 1. Any person may make a general assignment of all his property for the benefit of his creditors, by deed, duly acknowledged, which, when filed for record in the office of the clerk and recorder of the county where the assignor resides, or, if anon-resident, where his principal place of business is, in this State, shall vest in the assignee the title to all the property, real and personal, of the assignor, in trust, for the use and benefit of such creditors.
“ Section 2. The assignor shall annex to such assignment an inventory, under oath, of his estate, real and personal, according to the best of his knowledge, with the estimated value thereof, and also a list of his creditors, giving their names, residence if known, and the amount of their respective demands; but such inventory shall not be conclusive of the amount of the assignor’s estate, nor shall the omission of any property from the inventory defeat the assignment or conveyance of the same.
“ Section 3. No such deed of general assignment of property by an insolvent, or in contemplation of insolvency for the benefit of creditors, shall be valid, unless by its terms'it be made for the benefit of all his creditors, in proportion to the amount of their respective claims.” Session Laws 1885, p. 43; Mills’ Ann. Stats., §§ 169, 170, 171.
The construction of the foregoing sections does not seem to us to be a matter of difficulty. They permit any person *473 to make a general assignment for the benefit of his creditors by proceeding in conformity with their requirements; but to impart validity to the' deed, it must, by its terms, be for the benefit of all the creditors in proportion to the amount of their respective claims. The assignment is the voluntary act of the assignor; it cannot be compelled ; and when he voluntarily undertakes by deed of assignment to avail himself of the statute, he must make express provision for the ratable participation by his creditors in its benefits, or the deed is void: Palmer v. McCarthy, 2 Colo. App. 422. A void instrument is without force or effect for any purpose, and none can be given to it; and if a deed of assignment fails in the essential particular specified by the statute, the want cannot be supplied by judicial decision. The deed would not invest the assignee with any title, and creditors could proceed against the debtor in the same manner, and with the same effect, as if no assignment had been attempted.
But there is nothing in the act from which it can be implied that it was the purpose of the legislature to prevent a debtor, insolvent or not, from securing or paying one of his creditors in preference to another, while he retains dominion over his property, except as he undertakes to do so in a dee.d of general assignment, executed pursuant to the statute. At common law there was no restriction upon the right of a debtor to prefer creditors ; and, subject to the statutory provisions governing general assignments, his common law right remains unimpaired in this state.
The statute now in force has not, so far as we are aware, ever been before the supreme court for construction; but in Campbell v. Colorado C. & I. Co., 9 Colo. 60, the effect of the assignment act, which preceded the present law, upon a transaction similar to the one in question here, was considered by it. The act consisted of but one section which provided as follows: “ Whenever any person or corporation shall hereafter make an assignment of his or its estate for the benefit of creditors, the assignee, nominated in the deed of assignments, elected or appointed, shall be required to pay *474 in full, from the proceeds of the estate, all moneys bona fide due to the servants, laborers, and employes of such assignor for their wages accruing during the six months next preceding the date of such assignment, but to exceed in no event the sum of fifty dollars to any one person, and then remaining unpaid. All the residue of the proceeds of such estate shall be distributed ratably among all other creditors, and any preference of one creditor over another, except as above allowed, shall be entirely null and void, anything in the deed of assignment to the contrary notwithstanding.” Gen. Stats. (1883) p. 135. The statute quoted differs from the act now in force in that where an assignment contained preferences of creditors, the preferences only would be void; so that courts could easily uphold such an assignment by disregarding the preferences. In that case it was held that the law prohibited preferences in favor of creditors in general assignments, but did not prohibit partial assignments by means of which certain creditors might be secured to the exclusion of others. The questions involved in that case and in this were substantially the same, and they are in no manner affected by the difference between the two statutes: See also: Farwell v. Nillson, 133 Ill. 45.
We have been referred to a line of decisions announcing a contrary doctrine. Martin v. Hausman, 14 Fed. Rep. 160; Freund v. Yagerman, 26 Id. 812; Perry v. Corby, 21 Id. 737; Clapp v. Dittman, 21 Id. 15; Clapp v. Nordmeyer, 25 Id. 71; Kerbs v. Ewing, 22 Id. 693.
These cases all arose in the state of Missouri; were decided in the circuit court of the United States for that district ; and construed the Missouri law of assignments, which was in some respects similar to our own. They decided in effect that an instrument conveying the whole of an insolvent’s property to one or moré creditors would be construed as falling within the assignment law, and as for the benefit of all creditors, whether named in the instrument or not; and Judge Treat, in Freund v. Yagerman, expressed himself thus: “ The very purpose of the law was that no preference *475 should he given. No matter by what name the end sought to be effected, it is in violation of that statute. You may call it a mortgage, or you may make a confession of judgment, or use any other contrivance, by whatever name known, if the pui’pose is to dispose of an insolvent debtor’s estate, whereby a pz-eferenee is to be effected, it is in violation of the statute.” But these decisions were not followed by the state courts of Missouri; in Union Bank of Chicago v. Kansas City Bank, 186 U. S. 223, they were disapproved by the supreme court of the United States; and in May v. Tenney, 148 U. S. 60, their doctrine was repudiated. The latter case arose in this state under the present assignment act, and in discussing this statute, Mr. Justice Brewer, speaking for the court, said: “There is, neither in terms nor by implication, any duty cast upon an insolvent to dispose of his property by a general assignment, or anything which prevezits him from paying or securing one creditor in preference to others.”
This proceeding cannot be maintained. If Thropp’s judgment was fraudulent it could have been set aside, and the property which was taken subjected to the payment of the plaintiff’s claim; but it cannot be changed into something which it was not intended to be, and ci’editoz's let in under its cover to share with Thropp the proceeds of his execution. A compulsory assignment for the benefit of creditors is unknown to our law.
The judgment will be affirmed.

Affirmed.