### MESERVEY v. ROBY et al.

(Circuit Court of Appeals, Eighth Circuit. August 12, 1912.)

No. 3,540.

1. BANKRUPTCY (§ 175*)—VOIDABLE TRANSFER—INTENT.

To avoid a transfer of property by a bankrupt under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), it is incumbent on the plaintiff to show actual fraud, as distinguished from constructive fraud.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248; Dec. Dig. § 175.*]

2. BANKRUPTCY (§ 178*)—VOIDABLE TRANSFERS—INTENT TO HINDER, DELAY OR DEFRAUD CREDITORS.

The conveyance by a bankrupt within four months prior to the bankruptcy of real estate to a mortgagee in consideration of the cancellation of his claim and the payment of other valid mortgages and liens covering that and other property is not voidable for fraud as intended to hinder, delay, and defraud creditors, under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), where it was made in good faith, and the amount paid was not so inadequate as to be of itself an actual fraud upon creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 264–274, 283, 284; Dec. Dig. § 178.*]

Appeal from the District Court of the United States for the District of Colorado.

Suit in equity by Albert B. Meservey, trustee in bankruptcy of Flora Waycott and Ernest Waycott, against Elizabeth S. Roby and others, executors of the will of W. H. Roby, deceased. Decree for defendants, and complainant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

W. J. Chinn, of Colorado Springs, Colo. (Arthur Cornforth and D. P. Strickler, both of Colorado Springs, Colo., and J. Alfred Ritter, on the brief), for appellant.

W. B. Price (Ira Harris, on the brief), for appellees.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

REED, District Judge. This suit was originally brought against W. H. Roby, deceased, and others. After the decree in the District Court and the appeal was perfected, W. H. Roby died testate, and the suit has been revived in this court against the executors of his will.

The facts as shown by the record are substantially as follows:

Flora Waycott and Ernest Waycott, husband and wife, were separately adjudged bankrupts by the United States District Court for the District of Colorado February 17, 1908, upon their own separate petitions; and the appellant, Meservey, was thereafter duly appointed trustee of their respective estates.

On and prior to January 15, 1908, and prior to the filing of said bankruptcy petitions, Flora Waycott owned and was in possession of certain residence property and certain business property in the city of Colorado City, Colo., a city of some 4,000 or 5,000 inhabitants adjacent to Colorado Springs, Colo., which was all of the property then owned by her not exempt from execution. The only property then owned by Ernest Waycott was certain store fixtures of the value of $1,000 to $1,200.

The residence and business property together were incumbered by four mortgages to secure certain debts then owing by both of the Waycotts, viz.:

| | | |
|---|---|---|
| (1) | One made to deceased Roby, June 24, 1904, for ..................... | $25,000 |
| (2) | One made to the Newton Lumber & Mfg. Co., February 1, 1905, assigned to deceased Roby, for.............................. | 4,250 |
| (3) | One made to the Houston Lumber Co., May 1, 1906, for........ | 1,100 |
| (4) | One made to the Newton Lumber & Mfg. Co., December 1, 1906, for ........................................................ | 1,000 |
| | Total amount of the principal of above liens................... | $31,350 |

Each of said mortgages covers both properties.

The bankrupts were also jointly indebted to one Emma Sackett in the sum of $138.70, which was secured upon some other property.

Flora Waycott was also then indebted to other creditors in the sum of $13,607, which was unsecured, and Ernest Waycott to other creditors in the sum of $18,864, unsecured (including said $13,607, owing by Flora); and both were then insolvent, and they so knew. On said January 15th, the deceased, Roby, purchased from Mrs. Waycott the business property above mentioned for an agreed consideration of $40,001, and received from her a warranty deed there-

of which was signed by her husband. The consideration, as paid by him for the property on that day, is as follows:

(1) The release by him to her of the Roby mortgage and indebtedness which it secured, amounting with interest to......... $28,527 81
(2) The release of the Newton Lumber & Mfg. Co.'s mortgage and indebtedness then held by him, which with interest amounted to................................................... 4,628 87
(3) The payment by him of the Houston Lumber Co.'s mortgage and indebtedness, which with interest amounted to............. 1,425 45
(4) The payment by him of the Newton Lumber. Co.'s mortgage and indebtedness, which with interest amounted to............. 1,062 50
(5) Insurance, Water Charges, and Taxes, against the property... 3,238 62
(6) A claim of the First National Bank of Colorado City, against the Waycotts, secured by assignment of certain rentals of some of said buildings.................................. 600 00
(7) Two other small items aggregating......................... 42 50
(8) Cash to Flora Waycott:.................................... 475 25
                                                              _____
                                                              $40,001 00

The notes or other evidences of the indebtedness so paid by the deceased were surrendered to Mrs. Waycott.

Upon receipt of the conveyance of said property, Roby caused all of the residence property to be released from the liens of said mortgages and other incumbrances, and at once went into possession of the business property and thereafter received the rents therefrom. The value of this property is estimated by the witnesses to be from $40,000 to $70,000. The District Court entered a decree dismissing the bill at complainant's costs, and he prosecutes this appeal.

Counsel for appellant contend in their brief that the result of the conveyance of the business property to Roby was a preference under sections 60a and 60b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), that Roby had reasonable grounds to so believe, and that it is therefore voidable at the instance of the trustee. But in the argument at the bar they expressly disclaim all right to recover the property as a preference, and seek a reversal of the decree upon the ground alone that the conveyance was in violation of section 67e of the Bankruptcy Act and the statutes of Colorado, 1908; and fraudulent in fact as against the existing creditors of the Waycotts.

The Revised Statutes of Colorado 1908, relied upon by the appellant, as set out in the brief of his counsel, are:

Section 2671:

"Every conveyance or assignment in writing or otherwise, of any estate or interest in lands, or in goods or things in action, or of any rents and profits issuing thereupon, and every charge upon lands, goods, or things in action, or upon the rents and profits thereof, made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suits commenced, decree or judgment suffered with the like intent as against the person so hindered, delayed or defrauded, shall be void."

Section 2674:

"The question of fraudulent intent, in all cases arising under the provisions of this title, shall be deemed a question of fact, and not of law; nor

shall any conveyance or charge be adjudged fraudulent against creditors or purchasers solely on the ground that it was not founded on a valuable consideration."

It is the contention of the appellant that the equity of Mrs. Waycott in the business property was at least from $12,000 to $15,000 over and above the amount paid by Roby for that property, and that the effect of the conveyance to him was to hinder, delay, and defraud her creditors.

There is no possible ground under the testimony upon which this contention can be upheld, unless it be that the property at the time of its conveyance to Roby was worth more than he agreed to pay, and, in fact, did pay for it. The indebtedness of Mrs. Waycott secured by the incumbrances upon the property were in good faith owing by her, were past due and had been for some time, and she was not keeping up the interest payments, the taxes, and other charges upon the property. Under such circumstances, it was natural that Roby should insist upon the payment of that which was due him. Mrs. Waycott was unable to do so, and it was finally agreed between them that she should convey to Roby the business property in satisfaction of such incumbrances and the debts secured thereby, and the payment by him of the taxes, and other charges which he paid, and the cash payment of $475.25, and release the residence property from the liens of such incumbrances and charges. Admitting that Roby knew, or should have known, that the Waycotts were then insolvent, what is there in this to stamp the transaction as fraudulent? The property had been pledged to Roby, and the other mortgagees, as security for their respective debts years before the bankruptcy proceedings, and these liens and the taxes and other charges were liens thereon prior to the claims of the general creditors; and, aside from the cash payment of $475.25, there was nothing in the property for such creditors, assuming that its value was not greater than the consideration paid by him for it.

There is hardly any question upon which there may be a wider range of opinion than upon the actual value of property in a town or small city. The business property in question consists of four lots each 30 by 120 feet well located in the business center of Colorado City, upon which are brick buildings of different sizes, built in 1901 and later years, but which had not been kept in a very good state of repair at the time of the conveyance of the property to the deceased. The witnesses vary in their estimates of the value of this property from $40,000 to $70,000. It is alleged in the bill of complaint that the rentals of the property received by the deceased after he acquired it were not less than $500 per month; and in his answer the deceased admits that he has been in possession of the property since January 15, 1908, and has received the rentals thereof, which amounted approximately to $500 per month. Upon this as a basis of the rental value of the property, the complainant asked several of his witnesses what in their judgment would be the value of the property; and some of them, who are unsecured

creditors of the Waycotts, estimated the value at $60,000 and some at $70,000. Other of the complainant's witnesses estimated its value from its location and condition as known to them at $50,000 to $60,000, and deceased's witnesses from $40,000 to $50,000. The $500 monthly rental, however, was not the net rental or income from the property. For the year 1908 Roby testifies that the gross rents of the property, other than from the opera house were $3,928.-50, that the taxes, insurance, water rent, maintenance, and care of the property for the year were $1,630.64; thus leaving the net income of the property for that year, $2,297.86. Some of the rooms were not rented during a part of that year, and from the opera house he received nothing. The rentals for other years are not shown.

The trial court carefully considered all of the testimony bearing upon the condition, age, and rental value of the property, and found its fair value on January 15, 1908, to be $45,000, and that there was no intent on the part of the Waycotts in making that deed, or on the part of Roby in receiving it, to hinder, delay, or defraud other creditors of Mrs. Waycott. Recognizing the firmly settled rule that when the chancellor has considered conflicting evidence, made his findings, and rendered a decree thereon, it must be taken as presumptively correct and will not be disturbed unless an obvious error of law, or some serious mistake in the consideration of the evidence has been made, this finding of the trial court will not be disturbed, for no such error or mistake appears to have been made in this case.

[1] To avoid this transfer under section 67e of the Bankruptcy Act, it is incumbent upon the complainant to show actual fraud in fact in the conveyance of the property to the deceased, as distinguished from constructive fraud. Coder v. Arts, 152 Fed. 943, 82 C. C. A. 91, 15 L. R. A. (N. S.) 372; Id., 213 U. S. 242, 29 Sup. Ct. 436, 53 L. Ed. 772. Conceding that the conveyance of the property to Roby, and its effect upon the unsecured creditors of Mrs. Waycott, may be considered as an item of evidence in determining whether or not actual fraud in the transaction existed, we are clearly of the opinion that the facts under which this conveyance was made do not show any such fraud in fact in this transaction.

[2] A transfer by one to another of his property in good faith, either beyond or within the four months immediately preceding the filing of a petition in bankruptcy by or against him, to pay an honest antecedent debt, is not of itself sufficient to establish actual fraud in fact, or an intent on his part, or on the part of the creditor receiving the property, to hinder, delay, or defraud other creditors of the debtor within the meaning of section 67e of the Bankruptcy Act. Stewart v. Dunham, 115 U. S. 61–66, 5 Sup. Ct. 1163, 29 L. Ed. 329; Lampson & Powers v. Arnold, 19 Iowa, 479–483, 484; Coder v. Arts, 152 Fed. 943–947, 82 C. C. A. 91, 15 L. R. A. (N. S.) 372, above; Repauno Chemical Co. v. Victor Hardware Co., 101 Fed. 949–951, 42 C. C. A. 106.

Nor does section 2764 of the Revised Statutes of Colorado (1908) in our opinion aid the complainant. That section provides:

"Nor shall any conveyance or charge be adjudged fraudulent against creditors or purchasers solely upon the ground that it was not for a valuable consideration."

That the consideration paid by Roby was not a valuable consideration, if under any circumstances it could be so held, would not alone under this section be sufficient to avoid the conveyance on the ground of actual fraud, seems entirely clear. That the $40,000 paid by Roby for the property was a valuable consideration admits of no doubt. The most that could be said of that is that under one view of the testimony it may not have been its full value; but it is not so inadequate as to be of itself an actual fraud upon the unsecured creditors of Mrs. Waycott. Campbell v. Colorado Coal & Iron Co., 9 Colo. 60, 10 Pac. 248; Repauno Chemical Co. v. Victor Hardware Co., 101 Fed., 42 C. C. A., above. Our conclusion therefore is that the decree of the District Court must be affirmed, and it is so ordered.

Affirmed.