FRED H. POTTER, Trustee, Appellant, v. AMERICAN PRINTING & LITHOGRAPHING COMPANY, Appellee.

BANKRUPTCY:    Preferences—Voidability—Transfers Which Do
1  Not Lessen Estate.    A good-faith assignment, transfer, or payment of property by an insolvent debtor to his creditor, *which in no wise lessens the estate of such insolvent for the discharge of creditor obligations*, even though consummated within four months of the filing of a petition in bankruptcy, may not be set aside at the instance of the trustee in bankruptcy.

   PRINCIPLE APPLIED:    One Black was furnishing to amusement companies programs, in which he inserted various advertisements, for which he received pay.    He possessed no printing establishment—in fact, he had *no* property at any time, except such as he obtained from the profits of this enterprise. He employed a printing company to do his printing.    He was owing the company a substantial sum (which appears never to have been paid).    In order to keep his business going, he voluntarily went to the company and orally offered to assign or turn over to the company, at the close of each future month, bills due him for advertisements, and accruing during the preceding month, to an amount sufficient to pay his printing bills for the preceding months, the company to collect such bills and credit them on such current bills.    His offer was orally accepted.    The arrangement was faithfully carried out for nine months, except that the bills assigned or turned over by Black were not sufficient to fully discharge current bills.    A few days after Black turned over the last list of bills, he was

adjudged a bankrupt. When the above arrangement was made, Black was indebted to other creditors for about $300, but the printing company did not so know. The trustee in bankruptcy sought, on the ground of unlawful preference, to recover the amount of the bills so turned over. *Held*, the trustee's action might not be maintained.

ASSIGNMENTS: Requisites and Validity—Oral Assignments—Lack of Certainty—Effect. It matters but little how vague or indefinite an assignment may be, or that third parties had no notice thereof, if the assignment be actually executed by delivery to the assignee before the attaching of rights in third parties.

*Appeal from Polk District Court.*—Hubert Utterback, Judge.

JANUARY 11, 1918.

Action by a trustee in bankruptcy to recover from the transferee of property the amount thereof, on the theory that it was made at a time when the transferor was insolvent, and in fraud of the rights of creditors. Judgment dismissing plaintiff's petition. Plaintiff appeals.—*Affirmed*.

*Ayres, Strauss & Shaw*, for appellant.

*John C. De Mar*, for appellee.

Gaynor, J.—On and prior to August 1912, one Black was engaged in publishing and distributing programs for Ingersoll Park and other amusement companies. He solicited and procured advertising matter to be inserted in these programs, for which he received compensation. The programs so used were printed by the American Printing & Lithographing Company, defendant herein. In fact, it printed all the programs used by him in his business during the time he was so engaged.

In August, 1912, he went to the president of the defendant company, Mr. Hill, and proposed to turn over to the company, at the end of each month, accounts accruing dur-

ing the preceding month, sufficient to balance the printing bills for that month. This was an oral agreement between Black and the president of the Lithographing Company. Nothing was said at the time about any amount due from Black to the company at that time. There was, however, due about $1,100. Black had no assets whatever. He testified:

"I did this because I wanted to be sure and get the programs; that was the only thing I had, and I wanted to make the printing bills safe for that reason."

Thereafter, the defendant company printed bills each month for the use of Black in his business. At the end of each month, Black turned over to the company, in pursuance of his agreement, accounts accruing during the preceding month, made out on his own billheads, as follows: September, 1912, $192.55; October, $125.30; November, $117.45; December, $137.80; January, 1913, $100.08; February, $118.20; March, $154.00; April, $160.50; May, $29.70.

It does not appear that these bills, so assigned, paid the entire printing bill accruing during the preceding month. We should judge not, for the reason that, at the time he was adjudged a bankrupt, he was owing more to the defendant company than was owing at the time this agreement was made. These accounts, so assigned by Black, when turned over to the company, were collected by it. The date when collected does not appear, but we assume that it was within a reasonable time after they were turned over. The total amount collected is shown to be $1,048.70, and this was applied, when collected, upon the printing account. In the absence of testimony, we must assume that these accounts, as collected, were applied, as the agreement contemplated, in satisfaction of the account for printing for the preceding month. Black was adjudged a bankrupt on the 31st day of May, 1913, and the plaintiff is the duly appointed trustee in bankruptcy. At the time this agreement

to assign was made, in August, 1912, Black was indebted to other creditors in the amount of about $300. The defendant printing company was not advised of any indebtedness to anyone except itself, nor was there any discussion between Black and the president of the company to the effect that any accounts assigned should be applied on the old account, nor does it appear that they were so applied. The debts for the payment of which these accounts were assigned were not in existence, nor were the accounts in existence concern- ing which the talk was had. The agreement was to apply accounts accruing in the future to the satisfaction of debts to be created in the future, in pursuance of the arrangement between Black and the defendant company. Black wanted the printing done. He wanted to pay for the printing as it was done. He agreed with Hill, the president of the company, that, if the company would do the printing, so that he could place his advertising matter before the public, he would pay to the defendants, or turn over to them, ac- counts growing out of this joint venture sufficient to pay them, each month, for the work which they did during the preceding month. The agreement to turn over accounts, which is discussed by counsel as an assignment, amounted to no more than saying to Hill, the president of the com- pany, that, if they would do the printing during the follow- ing months, he would, at the end of each month, pay them for the printing so done, by turning over to them accounts accruing during that month.

At the time this contract was made, Black had nothing. There was no property, at the time this contract was made. available to any of the creditors. The property that came in- to existence, to wit, these accounts, came into existence after the contract was made. The payment to the defendant was a payment for services rendered in the creation of these ac- counts. Black secured advertising matter for which he was to be paid. The defendant company printed the programs

in which the advertising matter appeared. These persons, against whom the accounts ran, became indebted to Black under their agreement to pay for the advertising. Black became indebted at the same time to the defendant for its services in printing the programs in which the advertising matter appeared. Plainly, the agreement was to pay to the defendant, at the end of each month, out of these accounts so created, a sufficient sum to reimburse the defendant for its services in the creation of the accounts. These accounts were made payable to Black. If Black had collected these accounts, and turned the proceeds over in accordance with his agreement, it surely could not be claimed that he had preferred this defendant as a creditor to other creditors; nor could it be said that he did it for the purpose of hindering, delaying, or defrauding other creditors. At the end of each month, the agreement was consummated by the turning over of the accounts in the amounts hereinbefore set out. It amounts to no more than an agreement to pay for services rendered in aid of an enterprise out of the proceeds of the enterprise. The proceeds of these accounts, for which plaintiff seeks now to hold defendant, came from the enterprise. It certainly was no fraud on existing creditors to pay out of the proceeds of the enterprise for services rendered in making the enterprise profitable. Without these services, the enterprise out of which the accounts grew could not have been carried to a successful issue, and there would have been no accounts and no proceeds.

We are told that this was an assignment of accounts, and was so vague and indefinite that it had no force as against creditors; that no notice was given of the assignment; that the assignment was not in writing, and was not recorded; therefore it was void as to creditors; and our attention is called to such cases as *Lawrence, Manning & Cushing v. McKenzie*, 88 Iowa 432, *Sandwich Manufactur-*

2. ASSIGNMENTS:
requisites and
validity: oral
assignments:
lack of certainty: effect.

*ing Company v. Robinson,* 83 Iowa 567, and *Sperry v. Clarke,* 76 Iowa 503. These cases are not in point, for the reason that here the accounts involved had passed into the hands of the defendants, and had been collected by the defendants and applied as the contract between Black and Hill directed, before Black was adjudged a bankrupt. No creditor represented by this trustee in bankruptcy could, under the showing here made, maintain an action such as is brought by this trustee. If a creditor could not reach the proceeds, clearly the trustee cannot. There is no evidence of a fraudulent intent or purpose to hinder, delay, or defraud creditors. No action could be maintained by a creditor on the theory that the assignment was too vague and indefinite, or on the theory that he had no notice of it; for the assignment was consummated by delivery of the thing assigned, before these creditors acquired any rights, or attempted to acquire any rights, as against the defendant company in these accounts. So it matters not that the agreement to assign was vague and indefinite; it matters not that the original assignment was not in writing; it matters not that creditors had no notice of the assignment; for the reason that the assignment —if we call it an assignment—was consummated by a delivery of the thing agreed to be assigned as soon as it came into existence, and long before any suit was instituted, or any right acquired against this particular property by or in behalf of any creditor.

Under this record, there can be no reasonable claim that there was any fraudulent purpose entertained either by Hill or Black at the time this conversation was had, and this agreement made to transfer these accounts. The accounts, as property, did not exist at the time the conversation was had. No indebtedness for printing these accounts was in existence at that time. It was optional with the printing company whether it would do the printing or not. It did the printing, as this record shows, and for the

printing, at the end of each month it was paid.

It is contended, however, that all transfers within four months preceding the filing of the petition are void as against the claim of the trustee in bankruptcy. The transaction in no way lessened the estate of the bankrupt available to the creditors represented by the plaintiff's trustee. There was, therefore, no fraud in fact. The bankruptcy law recognizes two distinct transactions which may be attacked and avoided by a trustee in bankruptcy; and, so far as this case is concerned, they are the only two which we need consider.

First, a transfer of property made by an insolvent for the purpose of hindering, delaying, or defrauding creditors. If the transaction is made to secure or pay a pre-existing debt, and is made on the part of the insolvent to hinder, delay, or defraud other creditors, it may be avoided by a creditor or by the trustee, on a showing that this was the purpose of the transfer, supplemented by a further showing that the transferee took it for the purpose of enabling or aiding the insolvent in accomplishing the purpose intended. If a sale or transfer is made by the insolvent to one who is no creditor, the intention on the part of the insolvent to hinder, delay, or defraud creditors by the transaction, if known to the purchaser at the time, voids the transaction. So it appears that, if the trustee seeks to avoid the transaction on the ground that its effect was to hinder, delay, and defraud creditors, he must bring himself within the state law governing the rights of creditors in respect to the transaction. He takes the same place that the creditor occupied, and has no greater right; and the burden, therefore, rests upon the trustee, before the sale or transfer could be avoided, to show that it was made for the purpose of hindering, delaying, or defrauding creditors, and that it accomplished that purpose; and, if made to satisfy a pre-existing debt, that it was participated in by the debtor re-

ceiving the property, and taken for the purpose of aiding the insolvent in so doing; and, if transferred for a present consideration to one not a creditor, he must show that the transferee took it with knowledge of the purpose of his creditor to hinder, delay, or defraud creditors. This case is not within either of these rules.

The second proposition is where a transfer is made within four months preceding bankruptcy. This provision of the statute is to the effect that all transfers made within four months prior to the filing of the petition in bankruptcy, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any part of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present consideration; and all property of the debtor conveyed, transferred, assigned, or incumbered, shall, if he be adjudged a bankrupt, be and remain a part of the assets and estate of the bankrupt, and shall pass to his trustee, whose duty it shall be to recover and claim the same by legal proceedings for the benefit of the creditors. In Black on Bankruptcy, Section 462, the rule is laid down:

"A transfer or incumbrance of property cannot be set aside, although the party making it is insolvent at the time and is adjudged bankrupt within four months, if the person receiving it, in addition to giving a present fair consideration, is a 'purchaser in good faith' [citing *Young v. Allen,* (C. C. A.) 207 Fed. 318], even though a fraudulent intent on the part of the bankrupt to cheat or obstruct his creditors is fully made out [citing *In Re Benjamin,* 140 Fed. 320]. But on the other hand, if the purchaser or incumbrancer acted in collusion with the bankrupt, participated in his fraudulent purpose, or even had a guilty knowledge of it, the sale or lien cannot stand as against the trustee in bankruptcy [citing *McAtee v. Shade,* (C.C.A.) 185 Fed. 442]. Knowledge on the part of the purchaser or lienor, such as will defeat

the transaction, is knowledge that the bankrupt is not acting in good faith and with an honest purpose but is seeking to gain an advantage for himself by defeating or obstructing his creditors [citing *In Re Soudan Mfg. Co.,* 113 Fed. 804]. * * * If there are any circumstances attending the transaction sufficient to arouse the suspicions of an ordinarily careful and prudent person, then the purchaser is bound to exercise ordinary diligence in making and pursuing inquiries, in order to ascertain whether or not the seller can make a transfer of the property which will not be in violation of the bankruptcy law."

So it has been held that, if the transfer was made in good faith, and for a valuable consideration, it is not necessary, in order to save it, to show that the price paid was fully equal to the value of the property, provided it was not so inadequate as to amount in itself to an actual fraud on creditors. *Meservey v. Roby,* (C.C.A.) 198 Fed. 844.

A bona-fide transfer of property from an insolvent within four months of the filing of a petition in bankruptcy, made in good faith for a valuable consideration, to one who knows nothing of the insolvency, and who takes it in good faith, for a present valuable consideration, cannot be set aside by the trustee in bankruptcy on a mere showing that the creditor was insolvent at the time, and that the petition in bankruptcy was filed within four months succeeding the transfer. In the case now under consideration, the transaction called in question did not, in its consummation, diminish the estate available to creditors for the payment of their debts, and therefore did not work either actual or constructive fraud upon their rights.

There is nothing in this case that avoids the transfer of these accounts to the defendant under any theory of the four-months rule. We see no ground for interfering with the judgment of the district court, and the cause is,—*Affirmed.*

PRESTON, C. J., LADD, EVANS, and SALINGER, JJ., concur.