## IOWA BRIDGE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8609.

Circuit Court of Appeals, Eighth Circuit.

Feb. 13, 1930.

J. G. Gamble, of Des Moines, Iowa, for appellant.

Barham R. Gary, Sp. Asst. to Atty. Gen. (J. Louis Monarch, Sp. Asst. to Atty. Gen., and C. M. Charest, General Counsel, Bureau of Internal Revenue, and P. S. Crewe, Sp. Atty.; Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and MUNGER, District Judge.

GARDNER, Circuit Judge.

This matter is before this court on petition for review of the decision of the United States Board of Tax Appeals. The matter was submitted to that board on an agreed statement of facts. So far as material here, these facts may be summarized as follows:

The petitioner is a corporation organized under the laws of the state of Iowa, with its principal place of business at Des Moines, Iowa, and during the fiscal year ending February 28, 1922, its business consisted in the construction of bridges for certain counties in the states of Iowa, Minnesota, North Dakota, and South Dakota. On May 28, 1921, the stockholders of petitioner unanimously adopted a resolution selling, assigning, and transferring to J. S. Carpenter, president of the company, and owner of 748 of the 750 outstanding shares of its stock, certain contracts and parts of contracts for the construction of bridges theretofore entered into, but the work on which had not been completed. A copy of this resolution, setting forth in detail by number reference the contracts which were the subject thereof, is attached to and made a part of the stipulation.

The contracts for the construction of the bridges referred to in the resolution had been entered into prior to the time of the adoption of the resolution, and the petitioner, with certain minor exceptions, had procured and filed with the representatives of such counties, bonds securing the faithful performance of the contracts. The bonds covering the contracts with the counties in Iowa, Minnesota, and North Dakota, were executed by the petitioner, as president, and by certain surety companies as sureties; while the bonds covering the contracts in South Dakota were executed by the petitioner as president, and by J. S. Carpenter, individually, as surety.

The work contemplated by the contracts so transferred and sold was all completed in the period from June 1, 1921, to December 31, 1921. The respective dates of the completion of the respective contracts is set out in the stipulation, and none of this work covered by the contracts had been completed on June 1, 1921. On May 28, 1921, the capital stock of petitioner was increased from $25,000 to $100,000, and J. S. Carpenter subscribed and paid for the increase in capital stock on June 1, 1921. After the adoption of the resolution by the stockholders, entries

were made in the journal of the petitioner under the direction of certified public accountants, transferring to J. S. Carpenter, under the trade-name of Iowa Bridge Construction Company, the accounts shown by Exhibit 2, attached to the stipulation, and the Iowa Bridge Company retained certain debit accounts aggregating in value, as of May 31, 1921, a sum in excess of $93,000. After May 31, 1921, J. S. Carpenter, under the trade-name of Iowa Bridge Construction Company, caused entries relating to the construction of the bridges and completion of the work contemplated by the contracts referred to, to be entered upon the books of account theretofore used by the petitioner. The petitioner completed the construction of certain bridges and work contemplated by the contracts entered into by it prior to May 31, 1921, which were not referred to or transferred by the resolution of the stockholders, and all entries subsequent to May 31, 1921, relating to the construction of such bridges or the completion of such work, were entered on the books of account theretofore used by the petitioner under the designation "Iowa Bridge Company." Certain machinery, equipment, and tools owned by petitioner on May 31, 1921, were used by J. S. Carpenter, operating under the trade-name of Iowa Bridge Construction Company, in the completion of the said contracts sold and transferred to him, and subsequently to May 31, 1921, in the completion of said contracts, he purchased and used machinery, equipment, and tools in addition to the machinery, tools, and equipment of the Iowa Bridge Company. Carpenter, under the trade-name of Iowa Bridge Construction Company, maintained a bank account with the People's Savings Bank of Des Moines, Iowa, upon which checks for the payment of all pay rolls, materials, as well as general expenses in connection with the construction of the bridges and the performance of the work in completing the contracts so sold and transferred to him, were paid; typical examples of the checks drawn being attached to and made a part of the stipulation of facts.

From and after May 31, 1921, all correspondence relative to the construction of said bridges, and the performance of the work contemplated in said contracts, and with respect to the business conducted by Carpenter, was conducted in and under the name of Iowa Bridge Construction Company. No formal notice of the assignment or transfer of the contracts referred to was given to the surety companies who were sureties upon the bonds posted by petitioner for the faithful performance and completion of some of these contracts, but Carpenter verbally informed the general agent of the surety companies of the assignment of these contracts to him, operating under the trade-name of Iowa Bridge Construction Company. Neither was any formal notice of the assignment or transfer of these contracts given to the several counties with whom the contracts had been made, but it was customary in the bridge construction business for contractors holding contracts such as these, from time to time to sublet the same, or parts thereof, in which event no formal notice of the subletting was given, either to the county or municipal subdivision of the state, or the surety on the bonds securing the performance of the contracts. No written contract. relating to the sale, assignment, or transfer of these contracts by the Iowa Bridge Company to Mr. Carpenter, operating under the trade-name of the Iowa Bridge Construction Company, other than the resolution of the stockholders of the Iowa Bridge Company, and the entries in the books of account referred to in the stipulation, was made or entered into. J. S. Carpenter, in his individual return for the calendar year ending December 31, 1921, duly accounted for and paid tax at the current rates upon all the income derived from the construction of the bridges and performance of the work contemplated by the contracts so sold, transferred, and assigned to him. And the Iowa Bridge Company, in the fiscal year ending February 28, 1922, completed the construction and work contemplated by other contracts not sold and assigned to Mr. Carpenter and accounted for all income derived therefrom and paid taxes upon the net income derived therefrom at the current rates.

As of December 31, 1921, the credit balance of $51,522.27 in the profit and loss account of the Iowa Bridge Construction Company, representing the profits realized from the completion of the contracts sold and assigned to Carpenter, was credited to his personal account. On the accounts denominated Iowa Bridge Construction Company accounts and as of December 31, 1921, by means of entries in the ledger accounts, closing accounts under the designation of Iowa Bridge Construction Company and opening accounts of Iowa Bridge Company, there were transferred to the Iowa Bridge Company the accounts set forth in Exhibit 6 attached to the stipulation; all such transfers being made under the direction of certified public accountants.

The resolution for the sale, assignment, and transfer of the above-noted uncompleted contracts recites that: "The said J. S. Car-

penter shall pay to the Iowa Bridge Company an amount equal to the actual cash invested by said company in any or all the aforesaid contracts, for labor and material, and the said J. S. Carpenter shall relieve the said Iowa Bridge Company from any further responsibility in connection with the completion of said contracts and said J. S. Carpenter shall complete according to the terms of all such contracts the work hereinbefore assigned to him. All contracts taken by and in the name of the Iowa Bridge Company after the first day of June, 1921, are hereby assigned and shall be immediately turned over to J. S. Carpenter, who shall assume and do everything necessary to complete same, and relieve the said Iowa Bridge Company of any responsibility or liability in connection therewith."

There was thus presented to the Board of Tax Appeals for decision a question of law —whether the profits earned by the construction of the bridges described in the contracts transferred to Carpenter were profits of the Iowa Bridge Company, or were profits of Carpenter. The Board, however, did not accept this stipulation as to the facts, but made findings of its own, many of which are in conflict with, or are not supported by, the facts as stipulated. Based upon such built-up findings, the Board rendered its decision holding, in effect, that the profits resulting from the completion of these contracts were the profits of the Iowa Bridge Company, and not the profits of J. S. Carpenter.

■■ There was no evidence before the Board of Tax Appeals except the stipulation of facts, and it was clearly the duty of that board to base its decision upon such facts. That it has not done so was frankly admitted by counsel appearing for the government on oral argument, who said that, "We admit the Board of Tax Appeals has found facts not supported by the stipulation, but it has found sufficient facts supported by the stipulation to support its decision." The question presented to this court is a question of law, but in deciding that question of law it is the duty of the court to accept as the facts those disclosed by the stipulation, and not the facts as found by the Board of Tax Appeals. St. Paul Abstract Co. v. Commissioner of Internal Revenue (C. C. A.) 32 F.(2d) 225, 226; Kendrick Coal & Dock Co. v. Commissioner of Internal Revenue (C. C. A.) 29 F.(2d) 559; United States v. Pugh, 99 U. S. 265, 25 L. Ed. 322.

As said by this court in St. Paul Abstract Co. v. Commissioner of Internal Revenue,

supra, "Where the facts are undisputed there remains no question of fact in the usual sense of the term, but where the primary facts are agreed it is a question of law whether such facts justify the finding of an ultimate fact required by the statute," and again it is said, "We think that we must examine the stipulated facts and determine whether they justify the conclusion that this petitioner is not a personal service corporation within the meaning of the statute."

■■■ The government concedes that if the transfer and assignment of these contracts to Carpenter were valid, then the profits arising therefrom belong to him, and not to the Iowa Bridge Company. It is further conceded that as between the company and Carpenter, the transfer was good, and that as between Carpenter and the Iowa Bridge Company, Carpenter was entitled to the profits arising from the completion of the work. But it is contended that the contracts in the first instance were the contracts of the Iowa Bridge Company and the assignment could not release that company from its obligations created thereby, and therefore the profits must first have been its income. Unless expressly prohibited by statute, all ordinary business contracts, which are not necessarily personal in character, are assignable. Public contracts, in the absence of any statutory provision or rule of public policy restricting the right of assignment, may be assigned. Williston on Contracts, § 418; American Bonding & Trust Co. v. Baltimore & O. S. W. R. Co. (C. C. A.) 124 F. 866; Panhandle Lumber Co. v. Mackay (C. C. A.) 21 F.(2d) 916; Devlin v. New York, 63 N. Y. 8.

■ There was nothing in the nature of these contracts which required the personal services of either of the contracting parties, and it appears from the stipulation that contracts of this character were frequently sublet. The contracts were therefore clearly assignable, and there remains to consider whether or not they were in fact assigned.

■ The means by which these contracts were sought to be assigned was the adoption by the stockholders of a resolution. This was made a matter of record, and the books of the company otherwise indicate an assignment of the contracts. Carpenter accepted the assignment, acted thereon, performed all of the contracts, and performance by him was accepted by the counties with which the contracts were made, and settlements were made thereunder. Before the matter was the subject of consideration by the Board of Tax Appeals, the assignment and contracts

had been fully executed. An assignment need not be in any particular form so long as it indicates the intention of the parties, and the assignment here in question not only indicates the intention of the parties, but all of the interested parties acquiesced therein and acted thereon. Potter v. American Printing Co., 182 Iowa, 458, 165 N. W. 1044; State Cent. Savings Bank v. St. Paul Fire & Marine Ins. Co., 184 Iowa, 290, 168 N. W. 201; In re Macaulay (D. C.) 158 F. 322; Williston on Contracts, § 470; Williston on Contracts, § 1875. There was clearly a novation. The contracts were performed by the assignee and the performance thereof was accepted by the contracting parties.

In Williston on Contracts, § 420, the author says: "By whatever name the parties may call the transaction, if it is made clear that the so-called assignor intends by the transaction to be free from all further liability, it seems that acceptance by the other party to the contract of any subsequent performance from the so-called assignee, would amount to assent to a proposed novation, and the so-called assignor would be discharged from further liability."

 The fact that by reason of the transfer of these contracts to Carpenter and their performance by him resulted in a lessening of the tax burden, which would have been imposed had the contracts been fully completed by the Iowa Bridge Company, is not material. Tax on the income resulting from the completion of the contracts was paid by Carpenter and there was nothing illegal in the transaction. In fact, it is held that even though the transaction is a device to avoid the burden of taxation, or to lessen that burden, it is not for that reason alone illegal. U. S. v. Isham, 17 Wall. (84 U. S.) 496, 728, 506, 21 L. Ed. 728; Weeks v. Sibley (D. C.) 269 F. 155; Fraser v. Nauts (D. C.) 8 F. (2d) 106.

As said by the Supreme Court of the United States in United States v. Isham, supra: "It is said that the transaction proved upon the trial in this case, is a device to avoid the payment of a stamp duty, and that its operation is that of a fraud upon the revenue. This may be, true, and if not true in fact in this case, it may well be true in other instances. To this objection there are two answers: 1st. That if the device is carried out by the means of legal forms, it is subject to no legal censure. To illustrate: The Stamp Act of 1862 imposed a duty of two cents upon a bank-check, when drawn for an amount not less than twenty dollars. A careful individual, having the amount of twenty dollars to pay, pays the same by handing to his creditor two checks of ten dollars each. He thus draws checks in payment of his debt to the amount of twenty dollars, and yet pays no stamp duty. This practice and this system he pursues habitually and persistently. While his operations deprive the government of the duties it might reasonably expect to receive, it is not perceived that the practice is open to the charge of fraud. He resorts to devices to avoid the payment of duties, but they are not illegal. He has the legal right to split up his evidences of payment, and thus to avoid the tax. The device we are considering is of the same nature."

This principle is not seriously controverted by counsel for the Commissioner of Internal Revenue, and in fact, the rule has been recognized and applied by the Board of Tax Appeals in Robert Jemison, Jr., et. al., as Trustee, B. T. A. Dec. 1259, 3 B. T. A. 780, where it is said: "The fact that by the procedure taken the corporation avoided a tax is not sufficient reason, in the absence of proof of fraud, to hold the transaction other than what it actually was."

There is no claim of fraud in this case, and the motive is at most a matter of inference. It appears from the accounts attached to the stipulation of facts and made a part of this record, that a considerable amount of the capital of the petitioner was invested in obligations of the counties, represented largely by county warrants. The rate of tax to be paid by the petitioner, being a corporation, is computed with reference to its invested capital, and capital invested in tax exempt securities is excluded. This would result in a high rate of taxation for the Iowa Bridge Company, while on the other hand, Carpenter, as an individual, was subject only to the rates of taxes imposed by the law, regardless of invested capital. This fact may or may not have induced the transaction, but as there is nothing illegal or reprehensible in the transaction it must be sustained.

It follows that the decision of the Board of Tax Appeals should be and is reversed and set aside, and the case remanded with instructions to determine the tax in controversy in accordance with the view herein expressed.