State Central Savings Bank, Appellee, v. St. Paul Fire & Marine Insurance Company, Appellant.

INSURANCE: Forfeiture of Policy—Change of Title—Subsequent Receipt of Premiums. Change of title, in violation of the terms of the policy, will not forfeit the policy, when the insurer receives and retains subsequently maturing premiums, with knowledge of the forbidden conveyance.

INSURANCE: Forfeiture of Policy—Incumbrance—New Mortgage Supplanting Old Mortgage. A policy issued with knowledge of an existing mortgage on the property is not rendered invalid by the subsequent execution of a new mortgage for the *sole* purpose of taking up the old and pre-existing mortgage.

EVIDENCE: Parol as Affecting Writing—Third Parties—Real Nature and Purpose of Writing. A first mortgage holder, to whom a policy of insurance on the mortgaged property is payable, may, in avoidance of a plea that a *second* and subsequent mortgage between a buyer and a seller of the insured property

worked a forfeiture of the policy, show, by oral testimony, that such second mortgage was executed for the sole purpose of substituting the same for the first mortgage.

ASSIGNMENTS:   Requisites and Validity—Oral Assignments.   An oral assignment of a policy of insurance is valid.

*Appeal from Lee District Court.*—W. S. HAMILTON, Judge.

JULY 1, 1918.

REHEARING DENIED SEPTEMBER 20, 1918.

ACTION by a mortgagee on a policy of insurance. Opinion states the facts. Verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*W. C. Howell* and *Sullivan & Sullivan,* for appellant.

*L. J. Montgomery* and *Hollingsworth & Blood,* for appellee.

PER CURIAM.—This action is to recover upon a policy of fire insurance originally issued to one A. S. Strickler, and, by endorsement on the policy, made payable to the plaintiff, State Central Savings Bank, mortgagee, as its interests may appear, subject, nevertheless, to all the conditions of the policy. The property insured was burned on the 23d day of October, 1914. The property, at the time it was burned, considerably exceeded in value the amount of the policy. The action is brought by the Central Savings Bank, as mortgagee, to recover the amount of its interest as mortgagee in the property. The policy was issued on the 15th day of July, 1912. The amount of the policy was $2,000; the form of the policy, "The Iowa Standard Fire Insurance Policy." The amount of the mortgages held by the plaintiff at the time of the loss was far in excess of the amount named in the policy. The plaintiff held mortgages on the property as follows:

1. INSURANCE: forfeiture of policy: change of title: subsequent receipt of premiums.

One for $3,198.63, made and executed July 27, 1911, by A. S. and Anna G. Strickler to Henry Strickler, and by Henry Strickler assigned to plaintiff, by written assignment, on July 27, 1911. One mortgage for $3,000, dated May 19, 1906, given by Henry Strickler and wife, Mary Belle Strickler, and A. S. Strickler and wife, to Kellogg-Birge Company, assigned by Kellogg-Birge Company to Lucy K. Birge by written assignment, and by her assigned to Kate B. Elder by written assignment, and by her assigned to the plaintiff on the 20th day of May, 1907.

It is conceded that these mortgages were on the land at the time the policy was issued, and were held by the plaintiff bank at that time, and at the time the fire occurred, and were unsatisfied. We think the record shows a right in the plaintiff to recover, unless defeated by the matters urged by the defendant to which we call attention.

It is provided in the policy that, unless otherwise provided by agreement, this policy shall be void:

"If any change other than by death of the insured, whether by legal proceedings, judgment, voluntary act of the insured or otherwise, takes place in the interest, title, possession or use of the subject of insurance, if such change in possession or use makes the risk more hazardous; or

"If the subject of insurance or a part thereof (as to the part so encumbered) be or become encumbered by lien, mortgage or otherwise created by voluntary act of the insured, or within his control."

The contention of the defendant is that these conditions of the policy were violated, and by such violation all rights under the policy became forfeited. The violation charged is this: That, on the 30th day of December, 1913, without the knowledge or consent of the company, the insured, A. S. Strickler, conveyed the insured property, by warranty deed, to one D. H. Sage; that said sale and transfer were without the knowledge or consent of this defendant; further, that, on

the 6th day of June, 1914, D. H. Sage conveyed the property by warranty deed to W. L. Henkle, without the knowledge or consent of this defendant; and that, by reason thereof, the policy became void, and was and is of no force and effect. Further, the defendant says that, on the 18th day of September, 1914, W. L. Henkle mortgaged the insured premises to the said D. H. Sage to secure the sum of $6,000, and that said mortgaging and encumbrancing of said property were without the knowledge or consent of this defendant, and that, by reason thereof, said policy became void, and is and was of no force and effect, and this defendant is in no manner indebted to the plaintiff in this case, or to any other person, because of the issuance of the policy.

Defendant further says that, when the mortgage clause under which plaintiff claims was attached to the policy, and the plaintiff accepted the same, the plaintiff became bound by all the terms, conditions, and provisions of the policy, the same as if the said policy had been issued to the plaintiff as the original insured; that it was provided in said policy as follows:

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance, other than the interest of the assured as described herein, the provisions and conditions herein contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be agreed upon by the company."

It is further provided in the policy that, unless otherwise provided by agreement of this company, this policy shall be void if the policy be assigned before loss.

The defendant states the fact to be that D. H. Sage, who pretended to have an interest in said policy, made a pretended assignment of the policy to W. L. Henkle on the 18th day of September, 1914. The defendant denies that

Sage had any interest in the policy at the time he assigned, and, therefore, denies that Henkle acquired any rights in the policy from the assignment from Sage; further says that, whether the assignment would otherwise be valid or not, the defendant never consented to said assignment.

The plaintiff, replying to these matters alleged by the defendant, says: That the mortgage from Henkle to Sage, the $6,000 mortgage referred to by the defendant in its answer, dated September 18, 1914, did not constitute a mortgage or incumbrance upon the property until it passed into the hands of the plaintiff; that the mortgage was executed by Henkle to Sage, and placed in the hands of Sage, as agent, to negotiate, and for the sole purpose of carrying out an agreement and understanding between Henkle and Sage that Sage would procure a loan for $6,000 on the property, which loan, when obtained, should be applied in the discharge of the incumbrance already on the property then held by the plaintiff; that Sage took the mortgage as a nominal mortgagee, and as agent and trustee for Henkle, for the purpose of negotiating the loan and taking up the then existing incumbrance upon the land held by the plaintiff; that, in pursuance of said agreement and understanding, Sage did negotiate said mortgage to the plaintiff; that, prior to the negotiation to the plaintiff, it did not constitute a lien upon the land, nor was it an incumbrance, nor a valid and subsisting mortgage upon the premises, and was not such until received by the plaintiff; and that the delivery to Sage was in pursuance of the understanding and an intention on the part of Henkle and Sage that it should not constitute a mortgage until negotiated; and that, pursuant to said intention, Sage transferred it to the plaintiff; and that the same was received by the plaintiff only conditionally; that the condition upon which said mortgage was received by the plaintiff was that it should be taken in lieu of and as a substitute for the mortgages already existing upon said land,

and the old mortgages were to be cancelled and surrendered in consideration of this new mortgage; and that this is all that was done in respect to this mortgage involved in this controversy. Plaintiff further replies and says that, before the payment of the last premium upon the policy, the defendant had knowledge that the premises had been transferred to Henkle, and that Henkle had purchased the same; and, with knowledge that Henkle desired to continue the policy, the defendant collected and received, and has since retained, the premium falling due on said policy after said conveyance to Henkle; that the defendant has, therefore, consented to said change of title, and to the transfer of said insurance policy to Henkle, and has waived any right to object thereto.

Upon the issues thus presented, the cause was tried to a jury, and a verdict returned for the plaintiff. Judgment being entered upon the verdict, defendant appeals.

It appears that A. S. Strickler was the owner of this property at the time the policy was issued; that the property was incumbered by the two mortgages hereinbefore referred to; that subsequently, Strickler conveyed the property to one Augustine; that Augustine conveyed to one Henderson, and Henderson conveyed to Sage, and Sage to Henkle.

The complaint of the defendant is that Strickler conveyed this property to Sage and transferred the title without the knowledge and consent of the defendant, and that Sage conveyed the property to one Henkle, and that both conveyances were without the knowledge and consent of the defendant; that this constituted such a change in the interest and title of the property as voided the policy, under the provision of the policy hereinbefore set out.

We may concede this, and that the effect of these conveyances would be to defeat recovery on the policy, if it were not for the facts pleaded by the plaintiff in its reply, to wit: that, after Henkle had obtained the property by

purchase, he came to the company and expressed a desire to continue the policy upon the property; that defendant then had or then received full notice, and had knowledge that he (Henkle) had purchased the property and was the owner thereof; that the defendant consented to this request by receiving the premium due on the policy from Henkle, for the purpose of so continuing the insurance. Now, it is true that there is a controversy in the evidence touching this question, but there was evidence sufficient to justify the jury in finding that this premium was paid to and received by the company, with knowledge of the transfer, and with knowledge of the fact that Henkle, as owner, desired to continue the policy in force upon the property, and paid the premium for that purpose. The effect of this would be to continue the policy as a contract of indemnity. See *Ellis v. Council Bluffs Ins. Co.*, 64 Iowa 507. The forfeiture clause was for the benefit of the defendant, to protect it against the moral hazards which arise or may arise in the ownership of the thing insured. There are both physical and moral hazards in these risks. The company has a right to say in its policy that any change in the ownership, though not increasing the physical risk, may involve moral hazard in the risk assumed; and this fact is recognized by the courts. Therefore, change of ownership, when provided against in the policy, may defeat the rights of the assured, or any assignee of the policy. But that is a right which the defendant reserves in its policy. It may consent to carry the risk, even with the added moral hazard; and when it knows that the title to the property has changed, it may, if it elects, continue the insurance upon the property thereafter, or it may insist upon the strict terms of its policy. If, with knowledge of the fact that the title to the property has changed, it receives the premium stipulated for in the policy, it thereby elects to continue the policy, with whatever moral hazard may attach to change of ownership.

The change of title to property does not affect the physical character of the risk. It is recognized, however, that the physical property is safer from hazards of this kind when owned by one person rather than another, and the company has a right to limit its risk to the then owner of the property, unless it consents to change of ownership.

The evidence here is not strong, but is sufficient to justify the jury in saying that the defendant, when it received the payment, had full knowledge of the fact that the title had passed from Strickler, through Sage, to Henkle. The legal effect of receiving this payment, with knowledge of the change of ownership, was to waive its claim of added moral hazard, and was, in legal effect, an agreement to continue the policy in force under the changed conditions. It would be profitless for us to set out the evidence that was offered on this point. It is sufficient to say that it made a jury question, and the jury found for the plaintiff upon the issues.

Some question is made that the court, in its instructions to the jury, did not touch upon the fact of the conveyance from Strickler to Sage as invalidating the policy. In our view of the case, this was not necessary. There was a change in ownership, a change to which the defendant had a right to object, under the terms of its policy; and it had a right to withdraw from any further obligation to maintain the insurance on the property, upon knowledge of that fact. But, with knowledge of the fact that title had changed, and passed out to Strickler, the original owner, they elected to take the premium, and have ever since retained it; and, by so taking the premium, they must be held to have elected to continue the insurance as originally written. See, upon this point, *Padrnos v. Century Fire Ins. Co.,* 142 Iowa 199.

It is next contended that the policy was forfeited in that it was violated by the added incumbrance placed upon it, without the knowledge or consent of the defendant. The

added incumbrance, like the conveyance,
affected only the moral hazard. There was
a mortgage on the property before this
$6,000 mortgage, complained of, was made.
The property was subject to these prior
mortgages. If the plaintiff's testimony is believed,—and it
certainly was, by the jury,—this $6,000 mortgage, executed
by Henkle to Sage, was simply for the purpose of taking
up the burden that already rested upon the property in the
other mortgages in the hands of the plaintiff company.
Without setting out the testimony, it is apparent to us that
the jury could have well said that the moral hazard was
not increased; that the purpose in executing this mortgage
was simply to substitute it in the hands of the plaintiff
bank for the other mortgages that were on the property at
the time the policy was issued. This in no way affected
the hazard. Whenever this mortgage passed into the hands
of the plaintiff company and became effectual as a mort-
gage, it was, under the agreement of the parties, substi-
tuted for the lien created by the former mortgage, and could
not, under the agreement, become effectual as a lien upon
the property, except by the cancellation of these mortgages
that already rested on the property. By the execution of
this mortgage, there was no increase of either the physical
or moral hazard on the property; and, therefore, it could
not increase or in the least degree affect the burden as-
sumed by the defendants in the issuing of the policy. Though
executed to Sage, the evidence shows, or tends to show, that
it was placed by Henkle in Sage's hands simply as trustee,
to negotiate it for Henkle; that it never became, in the
hands of Sage, a valid and subsisting lien upon the prop-
erty. It only became such when transferred to the plaintiff,
as a substitute for and to take the place of the mortgages
already on the property protected by the policy. The mere
fact that the mortgage on its face ran to Sage, the mere fact

2. INSURANCE:
forfeiture of
policy: incum-
brance: new
mortgage sup-
planting old
mortgage.

that it purports a consideration passing from Sage to Henkle, does not estop this plaintiff to show the fact that Sage simply held it in trust for a specific purpose; that no title in fact passed to Sage, save for the purposes for which it was delivered to him: to wit, to be a substitute for the mortgages upon the property to protect which the policy was made.

In *Cone v. Century Fire Ins. Co.*, 139 Iowa 205, it was held that, if the mortgage did not affect any interest in the property, and could not have been enforced, the moral hazard was not increased.

"The incumbrance to avoid a policy must be valid, not merely nominal, and such as would have a tendency to create or increase temptation or motive for the destruction of the property, or decrease the owner's interest in guarding and preserving it."

See, also, *Russell v. Cedar Rapids Ins. Co.*, 71 Iowa 69; *Weigen v. Council Bluffs Ins. Co.*, 104 Iowa 410.

These provisions of the policy are intended for the protection of the company against increased hazard, whether moral or physical; and this purpose is recognized by the courts, as indicated in the authorities above. Of course, the incumbrancing of property against 3. **EVIDENCE: parol as affecting writing: third parties: real nature and purpose of writing.** provisions such as we have here is, *prima facie*, to avoid the policy. But the facts attending their execution are open to inquiry; and where it is made to appear affirmatively that the transaction resulted only in a change in the form of the security, and that neither the moral nor the physical hazard is increased by the act complained of, it ought not to be held as invalidating the policy. As said in *Ayres v. Hartford Fire Ins. Co.*, 17 Iowa 176:

"The object of the insurance company, by this clause, is that the interest shall not change so that the assured shall have a greater temptation or motive to burn the property,

or less interest and watchfulness in guarding and preserving it from destruction by fire. Any change in or transfer of the interest of the assured in the property of a nature calculated to have this effect, is in violation of the policy. But if the real ownership remains the same, if there is no change in the *fact* of ·*title,* but only in the evidence of it, and if this latter change is merely nominal, and not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire, the policy is not violated."

We think that, under the record made here, there was no such incumbrance of the property as violated the spirit and purpose against which the forfeiture clause was intended to operate.

Some contention is made by the defendant that there was no proper assignment of the policy to Henkle. Technically, this probably is true. There was no written assignment; but the jury could well find that, at the time of the conveyance to Henkle, it was understood and agreed between Sage and Henkle that the policy should pass to Henkle with the property. There is such a thing recognized in law as an oral assignment of a written instrument. It clearly was the intention of these parties that Henkle should become invested with all the rights under the policy, upon the purchase of the property. The defendant was informed that Henkle desired to continue in force the policy upon the property, as originally written. To this end, Henkle paid the premium on the policy, for the purpose of maintaining the integrity of the policy as originally written. This fact could not have been unknown to the defendant. It received the premium, and has ever since retained it. We think it is not in a position to assert the claim thus urged against the policy and its validity. Even if there were no assignment of the policy, it would still be

**4. Assignments: requisites and validity: oral assignments.**

good, so far as the rights of this plaintiff are concerned. But we think the jury could well have said, under this record, that there was an oral assignment of the policy to Henkle; that defendant recognized Henkle's desire to continue the policy in force upon the property; that it accepted the premium, knowing Henkle's purpose in paying the premium, and knowing Henkle's relationship to the property at the time. The effect of it was to continue the policy upon the property after Henkle's purchase of it, with all the indemnity that the policy gave. The effect of the transaction was to preserve the integrity of the policy in favor of Henkle and these plaintiffs, and we see no ground for relief to the defendant upon this contention. Whatever the contention may be, the policy was surely kept alive for the benefit of these plaintiffs.

Upon the whole record, we think the verdict of the jury does substantial justice between the parties; and, upon the whole record, the defendant has had a fair and impartial trial.

The defendant assigned twenty-five errors alleged to have been committed by the trial court during the progress of the trial. We have examined these with care; and, without entering upon a detailed discussion of them, we have to say that we find no error prejudicial to the rights of the defendant upon the issues tendered, under the record made.

Since we find no ground for interfering with the action of the district court, the cause is—*Affirmed.*

PRESTON, C. J., LADD, EVANS, GAYNOR, and SALINGER, JJ., concur.