WILLIAM S. HART, Appellee, v. HOME MUTUAL INSURANCE ASSOCIATION OF IOWA et al., Appellants.

No. 38758.

September 24, 1929.

*Mears, Lovejoy, Jensen & Gwynne* and *H. Haehlen,* for appellants.

*Hart & Hart* and *A. E. Sheridan,* for appellee.

Morling, J.—The insured property was a barn situated on a farm of 1,800 (the application says 1,600) acres. There was a mortgage of $10,000 on the entire farm at the time the insurance sued for was written. Plaintiff did not produce the policy, for the reason, as he testified, that he was unable to find it, and did not know what became of it. He said his recollection was that he

had the policy at the time the barn was burned; that the policy was just the same as another policy which was produced, except difference in description, name of the insured, amount of insurance, and date. This latter policy, as set out in the abstract, does not show copy of application attached. Plaintiff testified that "no application for insurance was attached to the policy sued upon." Defendant produced plaintiff's application. The application was for $4,000 on the barn "while located" on a particularly described quarter section. Following this description, the application proceeded:

"1. Is the title to the above property in your name? Yes. 2. State any incumbrance if any. $10,000. * * * 4. State number of acres of land you own on which the property to be insured is located. 1,600. Its value. $150,000. * * * The sale of buildings or any subsequent incumbrance or insurance made without consent of this association makes insurance on them void. * * *"

Defendant offered, but was denied the right, to prove that there were mortgages on tracts of the farm other than the quarter section particularly described. Defendant contends: 1. That the incumbrance was thereby misrepresented. 2. That a new mortgage of $12,000 which, after the issuance of the policy, was placed upon the entire farm, in lieu of the $10,000 mortgage shown in the application, voided the policy. 3. That the policy was voided because of failure of assured to pay assessments.

I. As the judgment must be reversed on another ground, and new trial may possibly follow, we refrain from commenting on the question whether a copy of the application is shown to have been or not to have been attached to the policy, further than to say that the evidence on neither side is, from the viewpoint of the appellate court, convincing.

As we construe the application, however, the representation as to the incumbrance related only to incumbrance upon the particular quarter section on which the buildings were located. The rejection of the evidence of the existence of mortgages on other tracts was, therefore, not error.

II. It is undisputed that the mortgage, at the time the policy was issued, was for $10,000, and that, after it was issued,

the $10,000 mortgage was replaced by one for $12,000. The policy declares that, unless otherwise provided,  it shall be void if the subject of insurance be or become incumbered by lien, mortgage, or otherwise, created by voluntary act of the insured, or within his control. Plaintiff argues that the new mortgage did not increase the incumbrance, because, as he asserts in argument, the new mortgage included past-due interest and taxes, which brought the original incumbrance up to $12,000. The evidence, however, does not bear out this contention. Plaintiff testified that the mortgage for $12,000 was a renewal of the $10,000 mortgage; that, at the time he filled out the application, he "forgot that mortgage had to be made larger, to take up the interest that had accumulated for a couple of years on that mortgage. I knew it was $10,000. I knew that I had given a renewal on it, and I just put it down $10,000, without thinking about the interest that had to be included in making the mortgage larger." He also testified that he could not "remember the interest accumulation. Probably in the neighborhood of $1,000." He says nothing about taxes. *Prima facie,* the execution of the $12,000 mortgage was a violation of the condition of the policy, and invalidated it. *Lee v. Agricultural Ins. Co.,* 79 Iowa 379; 26 Corpus Juris 246; *State Cent. Sav. Bank v. St. Paul F. & M. Ins. Co.,* 184 Iowa 290, 299; Sections 8981, 9018, Code of 1927.

Thus it became incumbent on plaintiff to show that the new incumbrance was not, as it purported to be, for an increased amount, and therefore not an increase of hazard. Even if full effect be given to plaintiff's testimony, the existing incumbrance amounted to only $11,000, while the new one was for $12,000.

Plaintiff further argues that John J. Hart was the agent of the company, and knew of the making of the $12,000 mortgage; that the company is chargeable with his knowledge; and that,  with such knowledge, the company, instead of canceling the policy, collected and retains assessments, without offer to refund them. The only evidence of the agent's knowledge is the testimony of the plaintiff that:

"I knew that John J. Hart, the agent, knew of that $10,000 at the time I got the insurance, and I knew that he knew of the

new mortgage to the Land Bank Company, and I knew he had collected premiums, as agent of that company, after he knew of the new mortgage.''

Defendants made proper motion to strike the statement with reference to what plaintiff knew that the agent knew, but the motion was overruled. While error in this ruling is not assigned, yet, in view of the new trial, and also for a complete discussion of the question under consideration, it is proper to say that the testimony was incompetent, and should have been stricken.

John J. Hart, though a witness for plaintiff, did not testify to having the knowledge which plaintiff imputes to him, nor to collecting assessments from plaintiff. In reference to his author-ity, he testified, in substance, that his authority was to solicit insurance, to take and send in applications, deliver policies, and collect premiums, but that he did not think he had any general authority from the home office to collect premiums; that members of the association would hand their assessments to him, and request him to send it, instead of themselves sending it; that he had received requests from the home office to collect premiums, and then had undertaken to do it, but without having a special request, did not make any definite move toward collecting premiums; that all he did was to send in the money when the people asked him to; that the receipts were made out, and sent to him; that he had adjusted losses when specially requested by the company. He was agent for the Union Mutual, and after it was taken over by the Home Mutual, was agent for it. Whether, in speaking of his authority and of his acts, he was referring to one company, or which, or both, does not appear. There is an utter absence of evidence that John J. Hart had any authority whatever to receive notice of incumbrance on behalf of either company, or to waive any of the provisions of the policy, or that he ever asserted, or that the company ever knew of his asserting, such authority. The policy provides that no person, unless duly authorized in writing, shall be deemed an agent of the association, and that no agent has authority to waive any of the terms or conditions of the policy, except only the secretary, and that any waiver by him must be in writing. There is no claim of waiver of this provision. Evidently John J. Hart's authority with respect to the policy

terminated with its delivery. The asserted knowledge of John J. Hart is not shown to have come to him in the course of his transaction of the company's business, or to have been received within the scope of his authority. His knowledge is not shown to have been the knowledge of the company, and the receipt of premiums by the company thereafter (if shown) was not a waiver. *Russell v. Cedar Rapids Ins. Co.*, 78 Iowa 216; *Hollis v. State Ins. Co.*, 65 Iowa 454; *Scrivner v. Anchor Fire Ins. Co.*, 144 Iowa 328; *Taylor v. State Ins. Co.*, 98 Iowa 521.

Plaintiff claims that the record of the $12,000 mortgage was constructive notice to defendant, but this contention is untenable. *Wicke v. Iowa State Ins. Co.*, 90 Iowa 4; 26 Corpus Juris 296.

The burden of proof was on plaintiff to show waiver, including knowledge and authority of agent. 26 Corpus Juris 518; 32 Corpus Juris 1321; 33 Corpus Juris 110. See' *McCoy v. National Life Ins. Co.*, 192 Iowa 127. On the record here, the policy was voided by the execution of the $12,000 mortgage.

(We are not to be understood as expressing an opinion on the question of how far the assured may go in allowing interest and taxes to accumulate and in executing new incumbrances

therefor without thereby increasing the hazard and voiding the policy. See *Kansas Farmers' Fire Ins. Co. v. Saindon*, 52 Kan. 486 [35 Pac. 15]; 53 Kan. 623 [36 Pac. 983].)

III. Defendants urge that the policy was, before the loss, canceled for nonpayment of an assessment of $10.40, notices of which were, at different times, mailed by the Union Mutual to

plaintiff, and produced by him. The only evidence of the levying of assessments is of one made by the Union Mutual, December 6, 1923, of 40 per cent of one annual premium, and an assessment made by the Home Mutual, January 9, 1924, of so many cents per hundred, ranging from 10 cents to 35 cents, on the various classes of insurance. There is no identification of the $10.40 assessment with either of these levies. On February 15, 1924, the Home Mutual wrote plaintiff that it had taken over the entire business of the Union Mutual, and that the policy in suit "is one of the policies listed as in good standing as

of this date.'' The policy register of the Union Mutual shows an assessment of $12 paid January 29, 1923, and one of $12 paid December 21, 1923, and ''assessment of $10.40 not paid.'' When and by whom these entries were made does not appear, except that inferentially the entry with respect to the $10.40 assessment was made by the secretary of the Home Mutual. He says that, on December 20, 1924, he made the entry on this same policy register, ''Canceled 12-25-1924.'' The loss occurred March 6, 1925. This secretary of the Home Mutual, in the correspondence between the Home Mutual and plaintiff concerning the loss, wrote to plaintiff, under date of March 19, 1925, that, on December 20, 1924, a registered notice of cancellation was mailed to plaintiff. This was in reply to a letter from plaintiff to the Home Mutual, in which plaintiff said that the Home Mutual did serve notice of cancellation, but that ''prompt remittance was made of the delinquent assessment upon this policy and another policy held by me in your company * * *'' The secretary of the Home Mutual wrote to plaintiff that, in November, 1923, the Union Mutual made a special assessment of $10.40, which was never paid. The policy provides that the secretary shall give delinquents five days' written notice by registered mail of cancellation; that written receipt by the post office of mailing shall constitute conclusive evidence of the mailing. There are in evidence post-office receipts, but there is no evidence of the contents of the packages or wrappers for which the receipts were given. The alleged notice of cancellation was given and the attempted cancellation was made long after the Union Mutual, which is claimed to have made the assessment, and during whose operation the default, if any, occurred, had turned over its business to the Home Mutual. The secretary of the Home Mutual does not claim to have had personal knowledge that the alleged assessment had not been paid, and the inference is that he had no personal knowledge. Without referring to further inconsistencies and uncertainties in the defendants' attempted proof of this ground, it is sufficient to say that the evidence is utterly insufficient to show the levying or nonpayment or notice of cancellation for nonpayment of assessment. As the evidence is insufficient to show levy and nonpayment of assessment, we need not give separate consideration to the contention that the policy was in suspense at

the time of the loss for nonpayment of assessments.—*Reversed.*

ALBERT, C. J., and DE GRAFF, KINDIG, and WAGNER, JJ., concur.